112 P.3d 69

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**John James Caleb KOCH,
Defendant–Appellant.**

No. 26296.

Supreme Court of Hawai'i.

May 9, 2005.

Reconsideration Denied May 31, 2005.

Artemio C. Baxa, Deputy Prosecuting Attorney, On the briefs, for the plaintiff-appellee State of Hawai'i.

Phyllis J. Hironaka, Deputy Public Defender, On the briefs, for the defendant-appellant John James Caleb Koch.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ., and ACOBA, J., concurring separately.

Opinion of by the Court by LEVINSON, J.

The defendant-appellant John James Caleb Koch appeals from the consolidated November 24, 2003 judgment of the circuit court of the second circuit, the Honorable Joel E. August presiding, in Cr. Nos. 02–1–0558(1) and 03–1–0271(1). In Cr. No. 02–1–0558(1), Koch was convicted of and sentenced for the following offenses: (1) promoting a dangerous drug in the third degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1243 (1993 & Supp.2001);[1] (2) promoting a detrimental drug in the third degree, in violation of HRS § 712–1249 (1993);[2] and (3) prohibited acts related to drug paraphernalia, in violation of HRS § 329–43.5(a) (1993).[3] In

---

1. HRS § 712–1243 provided:

 (1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount.

 (2) Promoting a dangerous drug in the third degree is a class C felony.

 (3) Notwithstanding any law to the contrary, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment. Effective July 1, 2002, the legislature amended HRS § 712–1243 by adding "except for first time offenders sentenced under section 706–[622.5]" to subsection (3) after "[n]otwithstanding any law to the contrary." See 2002 Haw. Sess. L. Act 161, § 8 at 575. As such, HRS § 712–1243(3) (Supp.2002) provided:

 . (3) Notwithstanding any law to the contrary, *except for first time offenders sentenced under*

*section 706–622.5*, if the commission of the offense of promoting a dangerous drug in the third degree under this section involved the possession or distribution of methamphetamine, the person convicted shall be sentenced to an indeterminate term of imprisonment of five years with a mandatory minimum term of imprisonment, the length of which shall be not less than thirty days and not greater than two-and-a-half years, at the discretion of the sentencing court. The person convicted shall not be eligible for parole during the mandatory period of imprisonment.
(Emphasis added.) Effective July 1, 2004, the legislature amended HRS § 712–1243 by deleting subsection (3) in its entirety. *See* 2004 Haw. Sess. L. Act 44, § 7 at 211.

2. HRS § 712–1249 provides that "[a] person commits the offense of promoting a detrimental drug in the third degree if the person knowingly possesses any marijuana or any Schedule V substance in any amount."

3. HRS § 329–43.5(a) provides:

 It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest,

Cr. No. 03–1–0271(1), Koch was simultaneously convicted of and sentenced for the following offenses: (1) promoting a dangerous drug in the third degree, in violation of HRS § 712–1243 (1993 & Supp.2002), *see supra* note 1; and (2) prohibited acts related to drug paraphernalia, in violation of HRS § 329–43.5(a), *see supra* note 3.

On appeal, Koch contends that the circuit court illegally sentenced him and denied his federal and state constitutional rights to due process when it imposed a sentence pursuant to HRS § 712–1243(3), *see supra* note 1, rather than pursuant to HRS § 706–622.5 (Supp.2002)[4] as a first-time drug offender.

We hold that the circuit court did not err in sentencing Koch pursuant to HRS § 712–1243(3), inasmuch as he did not qualify for sentencing under HRS § 706–622.5 as a first-time drug offender. Nonetheless, for reasons we discuss *infra* in Section III, we

vacate Koch's sentences with respect to the mandatory minimum terms of imprisonment that the circuit court imposed and remand this matter for redetermination of the mandatory minimum terms.

## I. BACKGROUND

On October 14, 2002, a Maui grand jury returned an indictment against Koch in Cr. No. 02–1–0558(1), charging him with the following offenses:[5] (1) promoting a dangerous drug in the first degree (Count I), in violation of HRS § 712–1241(1)(a)(i) (Supp.2002); (2) five counts of prohibited acts related to drug paraphernalia (Counts II, IV, VI, VII, and XI), in violation of HRS § 329–43.5(a), *see supra* note 3; (3) attempted promotion of a dangerous drug in the first degree (Count III), in violation of HRS § 712–1241(1)(b)(i) (Supp.1997) and HRS § 705–500 (1993); (4)

manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

4. HRS § 706–622.5 provided:

**Sentencing for first-time drug offenders; expungement.** (1) Notwithstanding any penalty or sentencing provision under part IV of chapter 712, a person convicted for the first time for any offense under part IV of chapter 712 involving possession or use, not including to distribute or manufacture as defined in section 712–1240, of any dangerous drug, detrimental drug, harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712–1240, or involving possession or use of drug paraphernalia under section 329–43.5, who is non-violent, as determined by the court after reviewing the:
(a) Criminal history of the defendant;
(b) Factual circumstances of the offense for which the defendant is being sentenced; and
(c) Other information deemed relevant by the court;
shall be sentenced in accordance with subsection (2); provided that the person does not have a conviction for any violent felony for five years immediately preceding the date of the commission of the offense for which the defendant is being sentenced.
(2) A person eligible under subsection (1) shall be sentenced to probation to undergo and

complete a drug treatment program. If the person fails to complete the drug treatment program and if no other suitable treatment is amenable to the offender, the person shall be returned to court and subject to sentencing under the applicable section under this part. As a condition of probation under this subsection, the court shall require an assessment as to the treatment needs of the defendant, conducted by a person certified by the department of health to conduct the assessments. The drug treatment program for the defendant shall be based upon the assessment. The court may require the person to contribute to the cost of the drug treatment program.
(3) For the purposes of this section, "drug treatment program" means drug or substance abuse services provided outside a correctional facility, but the services do not require the expenditure of state moneys beyond the limits of available appropriations.
(4) The court, upon written application from a person sentenced under this part, shall issue a court order to expunge the record of arrest for that particular conviction; provided that a person shall be eligible for one time only for expungement under this subsection.
(5) Nothing in this section shall be construed to give rise to a cause of action against the State, state employee, or treatment provider.
Effective July 1, 2004, the legislature amended HRS § 706–622.5 in respects not to pertinent to the present matter. *See* 2004 Haw. Sess. L. Act 44, § 11 at 214–15.

5. A codefendant, Kurtis Lee Steger, was also charged in the same indictment, under Cr. No. 02–1–0557(1).

promoting a dangerous drug in the third degree (Count V), in violation of HRS § 712–1243; (5) promoting a detrimental drug in the third degree (Count X), in violation of HRS § 712–1249, *see supra* note 2; and (6) acquiring a firearm without registration (Count XII), in violation of HRS § 134–3(b) (Supp.1999). The indictment alleged that Koch committed the foregoing offenses on or about April 12, 2002.

On July 8, 2003, the circuit court granted the motion of the State of Hawai'i [hereinafter, the "prosecution"] to dismiss Counts V and XII in Cr. No. 02–1–0558(1).

The circuit court conducted a jury trial in Cr. No. 02–1–0558(1). On July 18, 2003, the jury returned the following verdicts: (1) as to Count I, guilty of the included offense of promoting a dangerous drug in the third degree, in violation of HRS § 712–1243; (2) guilty as charged in Count X of promoting a detrimental drug in the third degree, in violation of HRS § 712–1249; (3) guilty as charged in Count XI of prohibited acts related to drug paraphernalia, in violation of HRS § 329–43.5(a); and (4) not guilty as to Counts II, III, IV, VI, and VII.

Meanwhile, on June 9, 2003, a Maui grand jury returned an indictment against Koch in Cr. No. 03–1–0271(1), charging him with (1) promoting a dangerous drug in the third degree (Count I), in violation of HRS § 712–1243, *see supra* note 1, (2) prohibited acts related to drug paraphernalia (Count II), in violation of HRS § 329–43.5(a), *see supra* note 3, and (3) place to keep pistol or revolver (Count III), in violation of HRS § 134–6(c) (1993 & Supp.1999). The indictment alleged that Koch committed the foregoing offenses on or about February 17, 2003.

On October 27, 2003, Koch entered no contest pleas to Count I, promoting a dangerous drug in the third degree, and Count II, prohibited acts related to drug paraphernalia. On January 21, 2004, the circuit court granted the prosecution's motion to dismiss Count III, place to keep pistol or revolver.

Sentencing in connection with Cr. No. 02–1–0558(1) was originally scheduled for September 17, 2003, but was continued to November 19, 2003 pending the outcome of Cr.

No. 03–1–0271(1), which had been set for trial commencing on October 27, 2003. The prosecution did not object to the continuance of the sentencing hearing in Cr. No. 02–1–0558(1).

On November 5, 2003, the prosecution filed a motion for consecutive terms of imprisonment, or in the alternative, extended terms of imprisonment in both criminal numbers. On November 18, 2003, Koch filed a memorandum in support of eligibility for sentencing under HRS § 706–622.5, *see supra* note 4, also in both criminal numbers.

On November 21, 2003, the circuit court conducted a sentencing hearing and a hearing on the prosecution's motions for extended terms of imprisonment, or in the alternative, consecutive terms of imprisonment, in both criminal numbers. The circuit court initiated the hearing with the following statement:

THE COURT: Before we go into this, I want to indicate that not only has the [c]ourt reviewed the most recent report, but the [c]ourt has also had the opportunity of reviewing the motion for consecutive terms of imprisonment and/or memorandum in support under [HRS § ]706–622.5.

. . . .

I am familiar with Mr. Koch's background and did at least one trial [that] he was involved in. . . . I think involving for all intents and purposes a codefendant Mr. Ste[ger], he has got some cases pending or some matters pending in this courtroom, and I've heard the testimony of some of the witnesses who appeared at Mr. Koch's trial.

*And I don't think that there is a great question about whether Mr. Koch was dealing or not. I mean, it's pretty clear from the record that Mr. Koch was not just using, but was dealing.*

And there's been an acknowledgment of that from at least two people who were somehow caught up in this, and I'm familiar with what was found in the place where Mr. Koch was living.

. . . [M]y general impression is that as between Mr. Ste[ger] and Mr. Koch, Mr. Koch was sort of more the follower than the leader between the two of them. . . .

[O]ne telling point is that the reason that they were able to get a search warrant for the location of the place where he was living in Kiheil, Maui] in the matters we're dealing with . . .—I believe it would be [Cr. No. 02–1–]0558–*was the fact that the confidential informant had purchased drugs from Mr. Koch.

*So you can make any arguments that you want to about whether, you know, he was or was not dealing or was just a user, but I can't completely-even though the charges that he has been convicted of and has [pled] to are not dealing charges-I can't close my eyes to what obviously was going on when it comes to the sentencing phase of this.*

And my inclination is to indicate to counsel that I do not think he is eligible for sentencing under Act 161 [ (HRS § 706–622.5) ]. I mean[,] Act 161 was . . . not designed to deal with people like Mr. Koch. That's not where the legislature was going. *Mr. Koch may have a drug problem, but I think he's got more of a sales problem and a merchandising problem than he's got . . . a drug problem as a user.*

(Emphases added.)

Thereafter, defense counsel argued as follows:

[Deputy Public Defender (DPD) ]: . . . I'm familiar with all the information you discussed[,] and accepted at face value, I reach the conclusion that you have reached.

However, . . . the jury had the chance to convict Mr. Koch of two counts of promoting a dangerous drug in the first degree and approximately 11 other counts. What they convicted him of was possession in any amount. And they had a choice between A, B, or C[ felonies] there, paraphernalia and pot. That was—is the jury's verdict. . . .

. . . .

I'm arguing that based on the jury's decision, he should be sentenced for possessory crimes because those are the

crimes that a jury of 12 people convicted him of, and they had the chance to throw the book at him. He was looking at 20 [years] to life[.] . . .

As for consecutive and extended, that would be totally inappropriate in a case like this. Again, the jury found that whatever his involvement was, was less.

. As to Cr. No. 02–1–0558(1), the circuit court sentenced Koch as follows: (1) in Count I, promoting a dangerous drug in the third degree, a five-year indeterminate maximum prison term, subject to a mandatory minimum term of two years and six months; (2) in Count X, promoting a detrimental drug in the third degree, thirty days in prison; and (3) in Count XI, prohibited acts related to drug paraphernalia, a five-year indeterminate maximum prison term to run concurrently with the term in Count I. As to Cr. No. 03–1–0271(1), the circuit court sentenced Koch as follows: (1) in Count I, promoting a dangerous drug in the third degree, a five-year indeterminate maximum prison term, subject to a mandatory minimum term of two years and six months; and (2) in Count II, prohibited acts related to drug paraphernalia, a five-year indeterminate maximum prison term to run concurrently with the term in Count I. The circuit court imposed all terms and the mandatory minimum term in Cr. No. 03–1–0271(1) to run concurrently with those imposed in Cr. No. 02–1–0558(1).[6]

On November 24, 2003, the circuit court entered its judgments of conviction and sentences in both criminal numbers. On December 19, 2003, Koch timely filed notices of appeal.

## II. *STANDARDS OF REVIEW*

### A. *Sentencing*

██ [A] sentencing judge generally has broad discretion in imposing a sentence. *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995); *State v. Valera,* 74 Haw. 424, 435, 848 P.2d 376, 381 . . . (1993). The

---

6. The circuit court presumably imposed the mandatory minimum terms of imprisonment of two years and six months as to Count I in Cr. No. 02–1–0558(1) and Count I in Cr. No. 03–1–0271(1)

pursuant to HRS § 712–1243(3), *see supra* note 1, although it did not state the basis for the mandatory minimum terms either at the sentencing hearing or in the judgment.

applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184; *State v. Kumukau,* 71 Haw. 218, 227–28, 787 P.2d 682, 687–88 (1990); *State v. Murray* [,] 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980); *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 16 (1979).

*Keawe v. State,* 79 Hawai'i 281, 284, 901 P.2d 481, 484 (1995). "[F]actors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions." *Fry,* 61 Haw. at 231, 602 P.2d at 17. And, " '[g]enerally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.' " *Keawe,* 79 Hawai'i at 284, 901 P.2d at 484 (quoting *Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184 (quoting *Kumukau,* 71 Haw. at 227–28, 787 P.2d at 688)).

*State v. Kaua,* 102 Hawai'i 1, 7, 72 P.3d 473, 479 (2003) (quoting *State v. Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000)) (brackets and ellipsis points in original).

### B. Questions Of Constitutional Law

 "We answer questions of constitutional law 'by exercising our own independent judgment based on the facts of the case,' " and, thus, questions of constitutional law are reviewed on appeal "under the 'right/wrong' standard." *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000) (citations omitted).

*Kaua,* 102 Hawai'i at 7, 72 P.3d at 479 (quoting *State v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001)).

### C. Statutory Interpretation

 "[T]he interpretation of a statute ... is a question of law reviewable de novo." *State v. Arceo,* 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (*quoting State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations

omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930 (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704 (1994). . . .

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists . . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (*quoting State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2)(1993). "Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Kaua,* 102 Hawai'i at 7–8, 72 P.3d at 479–480 (quoting *Rauch,* 94 Hawai'i at 322–23, 13 P.3d at 331–32 (quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999) (quoting *State v. Dudoit,* 90 Hawai'i 262, 266, 978 P.2d 700, 704 (1999) (quoting *State v. Stocker,* 90 Hawai'i 85, 90–91, 976 P.2d 399, 404–05 (1999) (quoting *Ho v. Leftwich,* 88 Hawai'i 251, 256–57, 965 P.2d 793, 798–99 (1998) (quoting *Korean Buddhist Dae Won Sa Temple v. Sullivan,* 87 Hawai'i 217, 229–30, 953 P.2d 1315, 1327–28 (1998)))))))).

### III. *DISCUSSION*

#### A. *The Circuit Court Did Not Err In Sentencing Koch Pursuant To HRS § 712–1243(3).*

Koch argues that, based on the plain language of HRS § 706–622.5, *see supra* note 5, the circuit court was required to sentence him·to probation as a first-time drug offender, rather than pursuant to HRS § 712–1243(3), *see supra* note 1. Koch maintains that he "met all the *qualifications* for, and did not suffer any of the *disqualifications* from, sentencing under HRS § 706–622.5[,]" inasmuch as all of his convictions constituted offenses under part IV of chapter 712 or offenses involving possession or use of drug paraphernalia. (Emphases in original). Koch avers that the circuit court's convictions, entered simultaneously on November 24, 2003, "constituted his first convictions for drug and paraphernalia possession[,]" and that, as such, the circuit "court's sole duty was to effectuate the mandatory sentencing provisions of HRS § 706–622.5: probation with mandatory drug treatment." Koch insists that the circuit court's sentences to terms of imprisonment are, therefore, illegal. We disagree.

The circuit court indicated that it did not believe that Koch was "eligible for sentencing under Act 161" based upon its interpretation from the record that Koch "was not just using, but was dealing." Nevertheless, the prosecution argues that Koch was not a first-time drug offender at the time of sentencing, a fact that rendered him ineligible for sentencing under HRS § 706–622.5. The prosecution emphasizes that Koch "does not explain ... why drug offenses committed on two different dates, nine months apart, and under two different indictments leading to two different determinations of guilt should be considered to be a single first-time drug offense." Koch does not respond to the prosecution's position, but merely insists that the only correct sentence was to probation pursuant to the plain language of HRS § 706–622.5.

Separate and apart from Koch's argument on appeal and the prosecution's rebuttal, we note that Act 161, which created HRS § 706–622.5, did not become effective until July 1, 2002. *See* 2002 Haw. Sess. L. Act 161, §§ 3 and 12 at 572, 575. Therefore, the threshold question on appeal is whether Koch was entitled to sentencing under the provisions of HRS § 706–622.5, which were in effect at the time of his sentencing but not on the date that he committed the offenses of which he was convicted in connection with Cr. No. 02–1–0558(1), *see supra* section I.

We note, by way of introduction, that no new punitive measure may be applied to a crime already consummated, where its application would work to the detriment or material disadvantage of the wrongdoer. Such legislation would be ex post facto law as to the offender. *Lindsey v. Washington,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937). *See also State v. Bunn,* 50 Haw. 351, 440 P.2d 528 (1968).

*State v. Von Geldern,* 64 Haw. 210, 212, 638 P.2d 319, 321 (1981).

In *Von Geldern,* this court held that an amendment to the mandatory minimum sentencing statute, which provided sentencing courts with discretionary authority to impose a lesser mandatory minimum sentence than that statutorily prescribed where "strong mitigating circumstances" were found to warrant such action, applied retrospectively to sentences imposed prior to the effective date of the amendment because the provisions were ameliorative and remedial. The defendant in *Von Geldern* had been sentenced prior to the effective date of Act 284, which amended HRS § 706–606.5, the mandatory minimum sentencing statute. This court nonetheless concluded that the judgment and sentence of the trial court had not become

final, inasmuch as his appeal was pending, and held that "the Act's ameliorative provisions were still capable of application in [the defendant's] case." 64 Haw. at 215, 638 P.2d at 323.

> Act 284 . . . is ameliorative in its intent and effect and its application in this case would neither be detrimental nor materially disadvantageous to the defendant. It authorizes the trial court to impose less than the mandatory minimum sentence of imprisonment where strong mitigating circumstances are shown to exist. It is not, therefore, ex post facto law. That being the case, the only possible obstacle to its application in this case would be HRS § 1-3 [ (1993) ] which provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended."

*Id.* This court further noted that

> HRS § 1-3 is only a rule of statutory construction and where the legislative intent may be ascertained, it is no longer determinative. And while it is true that there is nothing in the language of Act 284 to indicate, one way or the other, that its ameliorative provisions may be applied retrospectively, we think that such application where they may still be applied was obviously the intent of the legislature.

> Past legislative conduct has demonstrated an inclination on the part of the legislature to vest in the sentencing court the discretionary authority to apply the Hawaii Penal Code's more enlightened sentencing provisions where such application would further the penological objectives of the statute.

*Id.* at 214, 638 P.2d at 323.

This court likewise held in *State v. Nakata,* 76 Hawai'i 360, 375, 878 P.2d 699, 715 (1994), that

> Act 128 passes [the *Von Geldern* ] constitutional test. The Act reduces, not increases, possible punishment. It reduces the maximum sentence from thirty to five days and eliminates a provision for an ignition interlock system. . . . Thus, retroactive ap-

plication of HRS § 291-4, as amended by Act 128, is clearly not prohibited.

*See also Roxas v. Marcos,* 89 Hawai'i 91, 156, 969 P.2d 1209, 1274 (1998) (citing *Von Geldern* with approval and noting that "we believe that HRS § 636-16 should be afforded retroactive effect because it is a remedial statute designed to clarify and encourage the exercise of judicial discretion in the award of prejudgment interest").

Furthermore, "[t]here has been 'an inclination on the part of the legislature to vest in the sentencing court the discretionary authority to apply the Hawaii Penal Code's more enlightened sentencing provisions where such application would further the penological objectives of the statute.'" *State v. Gamulo,* 69 Haw. 424, 425, 744 P.2d 1208, 1209 (1987) (quoting *Von Geldern,* 64 at 214, 638 P.2d at 322). *See also State v. Gray,* 77 Hawai'i 476, 479, 888 P.2d 376, 380 (App. 1995), *overruled on other grounds by State v. Bolosan,* 78 Hawai'i 86, 890 P.2d 673 (1995) ("The basis for the decision in *Von Geldern* was the reasonable assumption that, unless expressly stated otherwise, the legislature always intends its new flexible sentencing alternatives to apply retroactively. That precedent applies to this case.").

In the present matter, Koch committed the offenses underlying Cr. No. 02-1-0558(1) on April 12, 2002. Act 161 became effective on July 1, 2002. Koch was sentenced on November 21, 2003. Analytically, the reasoning of the foregoing cases extends to the application of HRS § 706-622.5 to Koch's sentencing in Cr. No. 02-1-0558(1). Similarly to Act 284 at issue in *Von Geldern,* HRS § 706-622.5 is "ameliorative in its intent and effect and its application in this case would neither be detrimental nor materially disadvantageous to the defendant." 64 Haw. at 213, 638 P.2d at 322. "Despite the presumption against retrospective laws, we have repeatedly validated the retrospective application of several remedial statutes on the basis of express or implied legislative intent." *Id.* at 216, 638 P.2d at 323. Accordingly, retrospective application of HRS § 706-622.5, as established by Act 161, is "clearly not prohibited." *Nakata,* 76 Hawai'i at 375, 878 P.2d at

715.[7]

Thus, having determined that HRS § 706–622.5 was part of the statutory sentencing arsenal available to the circuit court with respect to the offenses that Koch committed on or about April 12, 2002, in connection with Cr. No. 02–1–0558(1), the question becomes whether, as of November 21, 2003, Koch was a "first-time drug offender" so as to qualify for sentencing under HRS § 706–622.5. We hold that Koch did *not* qualify as a first-time drug offender, and, therefore, that the circuit court did not err in sentencing him pursuant to HRS § 712–1243(3).

In *State v. Rodrigues*, 68 Haw. 124, 706 P.2d 1293 (1985), this court held that two offenses committed a month apart but sentenced on the same day constituted separate convictions for purposes of the repeat offender statute, HRS § 706–606.5. (Supp.1984). The defendant, Rodrigues, had argued on appeal that, for the purposes of the repeat offender statute, his second and third convictions could only be counted as one conviction by virtue of his being sentenced for the two offenses on the same day. 68 Haw. at 128, 706 P.2d at 1296. Following a discussion of the term "conviction," this court concluded

that, for the purposes of HRS § 706–606.5, "a mere finding of guilt by a jury or a court does not constitute a 'conviction' within the meaning of the section; a judgment entered upon the finding does." 68 Haw. at 132, 706 P.2d at 1299. Nevertheless, this court clarified that "[t]hough we have decided a 'conviction' for the purposes of HRS § 706–606.5 refers to the judgment rather than the finding of guilt, whether two sentences pronounced on the same day for separate offenses charged in two indictments constitute a single 'conviction' remains for decision." *Id.* We therefore concluded the following:

> Here, the two convictions Rodrigues would have us consider as one were for offenses committed a month apart, charged in separate indictments, and for which findings of guilt were entered in separate proceedings. . . . We see no basis for a ruling that the judgments entered on December 10, 1979 only resulted in a single conviction for purposes of sentence enhancement pursuant to the repeat offender law.

68 Haw. at 133, 706 P.2d at 1299.

The following table sets forth the history of Koch's drug offenses at issue in the present matter:

| Criminal Case No. | Date offense was ommitted | Date indictment filed | Date plea entered or verdict returned | Date sentenced | Date judgment filed |
|---|---|---|---|---|---|
| 02-1-0558(1) | 04/12/02 | 10/14/02 | 7/18/03 (jury verdict) | 11/21/03 | 11/24/03 |
| 3-1-0261(1) | 02/17/03 | 06/09/03 | 10/27/03 (no contest plea) | 11/21/03 | 11/24/03 |

7. Our holding that HRS § 706–622.5 has retrospective application to sentencing that occurs after the statute's July 1, 2002 effective date, because of its ameliorative intent and effect, is consonant with our decisions in *State v. Smith*, 103 Hawai'i 228, 81 P.3d 408 (2003), and *State v. Walker*, 106 Hawai'i 1, 100 P.3d 595 (2004). In *Smith*, we held that, pursuant to their plain language, the repeat offender statute, HRS § 706–606.5, trumps the first-time drug offender statute, HRS § 706–622.5. More specifically, we held that "in all cases in which HRS § 706–606.5 is applicable, including those in which a defendant would otherwise be eligible for probation under HRS § 706–622.5, the circuit courts must sentence defendants pursuant to the provisions of HRS § 706–606.5." 103 Hawai'i at 234, 81 P.3d

at 414. In *Walker*, we evaluated the effects of Act 44's amendments to HRS § 706–622.5 and held that

> [b]y its plain language, Act 44 prospectively permits *greater* discretion to sentencing courts confronted with conflicts between HRS §§ 706–606.5 and 706–622.5 than they previously possessed. Thus, based on the legislative intent reflected in Act 44, the "Act 161" version of HRS § 706–622.5, under which Walker was sentenced, did not trump the repeat offender statute.

106 Hawai'i at 10, 100 P.3d at 604. (Emphasis in original). In the present matter, we are simply extending retrospective application of the "Act 161" version of HRS § 706–622.5 to cases in which it would otherwise apply.

Similarly to *Rodrigues*, the circuit court imposed two sentences upon Koch in distinct criminal prosecutions on the same date, November 21, 2003. The sentences and judgments related to separate offenses that Koch had committed ten months apart, which were charged in two separate indictments, and for which findings of guilt were entered in separate proceedings.

At issue in the present matter are two distinct criminal proceedings in which sentencing was imposed on the same day. On September 17, 2003, sentencing in Cr. No. 02–1–0558(1) was continued until after trial in Cr. No. 03–1–0261(1), which was scheduled for October 27, 2003. Although it is unclear from the record whether Koch moved to continue sentencing in Cr. No. 02–1–0558(1), it appears that the circuit court postponed sentencing at Koch's request, given the sole notation that "no objection by the State" was registered.

Nonetheless, at the time of sentencing in 03–1–0271(1), the benefits of first-time offender sentencing under HRS § 706–622.5 had been wiped out for Koch. Sentencing Koch in succession on the same date did *not* transform the two separate adjudications of guilt into a single criminal offense, thereby rendering him a first-time drug offender. Thus, "[w]e see no basis for a ruling that the judgments entered on [November 21, 2003] only resulted in a single conviction for purposes of" the first-time drug offender sentencing. *See Rodrigues*, 68 Haw. at 133, 706 P.2d at 1299. Simply stated, on November 21, 2003, Koch was a second-time drug offender whom the circuit court was required to sentence pursuant to the terms of HRS § 712–1243(3).

Because Koch was not a first-time offender within the meaning of HRS § 706–622.5, he was not entitled to the benefits of first-time drug offender sentencing. Therefore, it matters not what the circuit court's thought processes were with respect to why it believed Koch to be ineligible for sentencing under HRS § 706–622.5, inasmuch as the circuit court was *required* to sentence him pursuant to HRS § 712–1243(3) in both criminal numbers. "In any event, ... the trial court reached the right result for the wrong reasons." *State v. Propios*, 76 Hawai'i 474, 486, 879 P.2d 1057, 1069 (1994). *See also Lee v. Heftel*, 81 Hawai'i 1, 5 n. 2, 911 P.2d 721, 725 n. 2 (1996); *State v. Pinero*, 75 Haw. 282, 290, 859 P.2d 1369, 1373 (1993). Accordingly, we hold that the circuit court did not err in sentencing Koch pursuant to HRS § 712–1243(3) in both criminal numbers.

B. *The Circuit Court Erred In Imposing Two Maximum Mandatory Minimum Terms Of Imprisonment Based Upon Conduct For Which Koch Was Found Not Guilty.*

■ Koch argues that the circuit court's "conclusion that [he] was dealing drugs and therefore disqualified from sentencing under HRS § 706–622.5 violated [his] constitutional rights to due process because it completely disregarded the specific offenses of which [he] was convicted[.]" Inasmuch as we have determined that Koch did not qualify for sentencing under HRS § 706–622.5, Koch's argument that the circuit court erred in failing to sentence him as a first-time offender is without merit. Nevertheless, we agree that the circuit court erred in factoring its belief that Koch was dealing drugs into its imposition of the two *maximum* statutorily prescribed mandatory minimum terms of imprisonment of two years and six months, *see supra* note 1.

"In determining the particular sentence to be imposed, the court must consider a variety of factors [enumerated in HRS § 706–606 [ (1993) [8]]] in exercising its discretion in fit-

---

8. HRS § 706–606 provides:

**Factors to be considered in imposing a sentence.** The court, in determining the particular sentence to be imposed, shall consider:
(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed:

(a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
(b) To afford adequate deterrence to criminal conduct;
(c) To protect the public from further crimes of the defendant; and
(d) To provide the defendant with needed educational or vocational training, medical care,

ting the punishment to the crime 'as well as the needs of the individual defendant and the community.'" *State v. Nunes,* 72 Haw. 521, 524–25, 824 P.2d 837, 839 (1992) (quoting *State v. Kumukau,* 71 Haw. 218, 225, 787 P.2d 682, 687 (1990)) (footnote omitted) (some brackets added and some in original).

We recently held in *State v. Vellina,* 106 Hawai'i 441, 106 P.3d 364 (2005), that consecutive sentencing based solely upon the deputy prosecuting attorney's unsubstantiated allegation of uncharged misconduct, to wit, that Vellina sold the firearms he had stolen to a drug dealer for drugs, constituted plain error.

In a manner analogous to *Vellina,* in sentencing Koch, the circuit court assumed that Koch had engaged in unlawful conduct of which he had been expressly *acquitted.* The circuit court specifically noted that it believed Koch had been dealing drugs, even though the offenses before it were not "dealing charges." *See supra* section I.

We have long considered mandatory minimum terms of imprisonment to be enhanced sentences subject to the full panoply of constitutional protections:

> We have previously held that there is no substantive difference between the procedures required for the imposition of a mandatory minimum term of imprisonment and an extended term of imprisonment. *See* [*State v.]Robinson,* 82 Hawai'i 304,] 315, 922 P.2d [358,] 369 [ (1996) ] ("This court has not deemed the characterization of a sentence as 'extended' or 'enhanced' determinative of the procedures required.") . . . .
>
> . . . .
>
> . . . We reaffirm that, for constitutional purposes, there is no distinction between extended and mandatory minimum enhanced sentencing. Both constrain the discretion of the sentencing judge and fix

the term of incarceration imposed upon the defendant as a result of the conviction. *State v. Tafoya,* 91 Hawai'i 261, 274, 982 P.2d 890, 903 (1999).

Notwithstanding that the circuit court had the authority to sentence Koch pursuant to the terms of HRS § 712–1243(3), it did not have the discretion to consider alleged conduct of which Koch was acquitted in sentencing him. As such, it appears that the circuit "court clearly exceeded the bounds of reason." *Kaua,* 102 Hawai'i at 7, 72 P.3d at 479 (citations omitted).

Inasmuch as there is a possibility that the circuit court's imposition of the maximum mandatory minimum terms allowed by HRS § 712–1243(3)—two years and six months—was a function of its belief that Koch was dealing drugs, we must vacate the circuit court's imposition of the two-year-six-month mandatory minimum terms in both criminal numbers and remand this matter for a redetermination of the appropriate mandatory minimum terms.

## IV. CONCLUSION

In light of the foregoing analysis, we affirm the circuit court's indeterminate maximum prison sentences imposed pursuant to HRS § 712–1243(3), vacate the mandatory minimum terms of imprisonment of two years and six months in both Cr. No. 02–1–0558(1) and Cr. No. 03–1–0271(1), and remand for a redetermination of the appropriate mandatory minimum terms.

I concur in the result only.

---

or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.