STATE OF HAWAI`I, Plaintiff-Appellee,
v.
RICHARD SHANNON COSTA, Defendant-Appellant
No. 28001
Intermediate Court of Appeals of Hawaii.
March 31, 2008.
On the briefs:
Daniel G. Hempey Chief Judge for Defendant-Appellant.
Tracy Murakami, Deputy Prosecuting Attorney, County of Kaua`i, for Plaintiff-Appellee.

MEMORANDUM OPINION
RECKTENWALD, C.J., Nakamura and Fujise, JJ.
Defendant-Appellant Richard Shannon Costa (Costa) appeals from the May 26, 2006 Judgment of Conviction and Sentence that was entered in the Circuit Court of the Fifth Circuit (circuit court),[1] finding him guilty of Murder in the Second Degree in violation of Hawai`i Revised Statutes (HRS) § 707-701.5(1) (1993),[2] and sentencing him to life imprisonment with the possibility of parole. Costa contends that the circuit court reversibly erred in instructing the jury on the consequences of a verdict of not guilty by reason of mental defect or disease, and that his trial counsel was ineffective for failing to object to that jury instruction. For the reasons set forth below, we affirm.

BACKGROUND
On January 16, 2005, Costa was arrested after he confessed to Kaua`i police department detectives that he killed Weslyn Jerves (Jerves) on January 13, 2005 while the two of them were at "Glass Beach" on the island of Kaua`i. Three days after his arrest, Costa was charged by written complaint with the murder of Jerves. On March 14, 2006, Costa filed a Notice of Intent to Rely on Defense of Mental Disease, Disorder or Defect, pursuant to HRS § 704-400 (1993).[3]
During trial, Costa admitted to killing Jerves but argued that the killing was either in self-defense, a result of extreme emotional distress, or due to a mental disease or defect. Both the State of Hawai`i (State) and Costa had experts testify regarding Costa's alleged mental illness and ability to control his actions when he stabbed Jerves multiple times with a knife and slit her throat.
At a conference held on April 20, 2005 to settle final jury instructions, the court considered three jury instructions proposed by the State: the first, regarding Costa's "state of mind"; the second, regarding "the definition of murder in the second degree"; and the third, regarding "extreme mental or emotional disturbance, and the elements thereof." After both sides agreed to the State's proposed instructions, the circuit court went over a number of instructions proposed by the court. The court asked both attorneys about their position on the court's proposed instruction "Number 19, which is [Hawai`i Standard Jury Instruction] 7.07." This instruction stated in pertinent part:
If you are unable to reach a unanimous agreement as to whether the affirmative defense has been proved or not been proved, then a verdict may not be returned.
If the defendant is acquitted on the ground of physical or mental disease, disorder or defect excluding responsibility, the court shall make an order as follows:
(a) The court shall order him committed to the custody of the Director of Health to be placed in an appropriate institution for custody, care, and treatment if the court finds that he presents a risk of danger to himself or others and that he is not a proper subject for conditional release; or
(b) The court shall order him to be released on such conditions as the court deems necessary if the court finds that he is affected by physical or mental disease, disorder or defect and that he presents a danger to himself or others, but that he can be controlled adequately and given proper care, supervision, and treatment if he is released on condition; or
(c) The court shall order him discharged from custody if the court finds that he is no longer affected by a physical or mental disease, disorder, or defect, or if so affected, that he no longer presents a danger to himself or others and is not in need of care, supervision, or treatment.
This information on the alternatives available to the Court is given only for the purpose of informing you of the consequences to the defendant that may result from an acquittal on the ground of physical or mental disease, disorder, or defect excluding responsibilities. These consequences must not in any way influence your decision.
Both attorneys stated that they had no objection to that proposed instruction. The Instructions Proposed by the Court were filed on April 24, 2006. Court's Instruction No. 19[4] reflects that it was "[g]iven by agreement."
After the conclusion of the State's rebuttal case, the circuit court instructed the jury. The instructions to the jury included instructions on the defense of not guilty by reason of insanity, which were, in pertinent part:
The defendant has raised the affirmative defense of physical or mental disease, disorder or defect, excluding criminal responsibility. Before you may consider this affirmative defense, you must first determine whether the prosecution has proven all of the elements of murder in the second degree or manslaughter beyond a reasonable doubt.
If you unanimously find that the prosecution has not proven all of the elements of murder in the second degree or manslaughter beyond a reasonable doubt, then you must find the defendant not guilty of that offense without considering the affirmative defense.
If you unanimously find that the prosecution has proven all of the elements of murder in the second degree or manslaughter beyond a reasonable doubt, then you must consider the affirmative defense.
It is an affirmative defense to murder in the second degree or manslaughter that, at the time of the offense, the defendant was not criminally responsible for his conduct. The defendant is not criminally responsible for his or her conduct if, at the time of the charged offenses, and as a result of physical or mental disease, disorder or defect, the defendant lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
After instructing the jury about the elements of this defense, the circuit court read the consequences jury instruction, and then instructed the jury that "[y]ou must not discuss or consider the subject of penalty or punishment in your deliberation of this case."
Finally, after fully instructing the jury, the circuit court asked whether there was "any objection to the manner in which the instructions were read to the jury?" Neither the State, nor Costa's counsel, objected.
The jury found Costa guilty of Murder in the Second Degree. Costa now appeals from his conviction.

POINTS ON APPEAL
Costa contends that he was "denied due process when the court instructed the to [sic] jury of the consequences of a verdict of not guilty b[y] reason of mental defect." Additionally, Costa asserts that his "counsel at trial was ineffective for failing to object to the jury instructions regarding mental defect."

STANDARDS OF REVIEW

A. Jury Instructions
When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading.
Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.
Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.
If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.
State V. Gonsalves, 108 Hawai`i 289, 292-93, 119 P.3d 597, 600-01 (2005) (internal quotation marks, citations, and brackets omitted; block quote format changed) (quoting State v. Arceo, 84 Hawai`i 1, 11-12, 928 P.2d 843, 853-54 (1996)).
Where, as in the present case, there was no objection to the contested jury instruction, to prove error the appellant must overcome the presumption that the jury instruction was correct. State v. Nichols, 111 Hawai`i 327, 337 n.6, 141 P.3d 974, 984 n.6 (2006).
In Nichols, the Hawai`i Supreme Court held that,
although as a general matter forfeited assignments of error are to be reviewed under the [Hawai`i Rules of Penal Procedure (HRPP)] Rule 52(b) plain error standard of review, in the case of erroneous jury instructions, that standard of review is effectively merged with the HRPP Rule 52(a) harmless error standard of review because it is the duty of the trial court to properly instruct the jury. As a result, once instructional error is demonstrated, we will vacate, without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt.
Id. at 337, 141 P.3d at 984.

B. Statutory Interpretation
"The interpretation of a statute is a question of law reviewable de novo." State v. Arceo, 84 Hawai`i 1, 10, 928 P.2d 843, 852 (1996) (internal quotation marks omitted).
Furthermore, our statutory construction is guided by established rules:
When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists . .
In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1-15(1) [(1993)]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
Gray [v. Admin. Dir. of the Court], 84 Hawai`i [138,] 148, 931 P.2d [580,] 590 [(1997)] (quoting State v. Toyomura, 80 Hawai`i 8, 18-19, 904 P.2d 893, 903-04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1-15(2). . . . "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1-16 (1993).
State v. Koch, 107 Hawai`i 215, 220, 112 P.3d 69, 74 (2005) [(some brackets added and some in original) (one ellipsis added and some in original)] (quoting State v. Kaua, 102 Hawai`i 1, 7-8, 72 P.3d 473, 479-480 (2003)). Absent an absurd or unjust result, see State v. Haugen, 104 Hawai`i 71, 77, 85 P.3d 178, 184 (2004), this court is bound to give effect to the plain meaning of unambiguous statutory language; we may only resort to the use of legislative history when interpreting an ambiguous statute. State v. Valdivia, 95 Hawai`i 465, 472, 24 P.3d 661, 668 (2001).
Silva V. City & County of Honolulu, 115 Hawai`i 1, 6-7, 165 P.3d 247, 252-53 (2007) (brackets and ellipses in original) (quoting Hawai`i Home Infusion Assocs. v. Befitel, 114 Hawai`i 87, 91, 157 P.3d 526, 530 (2007)).

C. Ineffective Assistance of Counsel
When reviewing a claim of ineffective assistance of counsel, this court looks at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. The defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.
State v. Wakisaka, 102 Hawai`i 504, 513-14, 78 P.3d 317, 326-27 (2003) (internal quotation marks, citations, and footnote omitted).

DISCUSSION

A. The Circuit Court Did Not Err In Giving the Consequences Instruction
On appeal, Costa contends that he was "denied due process when the court instructed the . . . jury of the consequences of a verdict of not guilty b[y] reason of mental defect." Specifically, Costa states that "the jury should not have been informed of the fact that [he] could be released if [the jury] found [him] not guilty by reason of mental disease or defect[,]" and that "the instruction not to consider [the] penalty was inconsistent with the instruction of the consequence of a verdict of not guilty by reason of mental disease or defect."

1. The circuit court's consequences jury instruction was correctly given
Costa contends that the circuit court erred in giving the consequences jury instruction, and that, as a result, his due process rights under the United States and Hawai`i constitutions were violated.[5] Costa asserts that "he was denied a fair trial when the Court informed the jury that [he] could be released into society if the jury found that he proved that he suffered from a disease or a mental defect[,]" and therefore, "scared the jury into deciding his mental state with a bias against finding a mental defect." Furthermore, Costa contends that the circuit court erred in giving the consequences jury instruction because he did not "request" the instruction "as required by HRS § 704-402(2) [(1993)]." However, Costa's arguments are without merit.
HRS § 704-411 (1993 & Supp. 2005) provides in pertinent part:
Legal effect of acquittal on the ground of physical or mental disease, disorder, or defect excluding responsibility; commitment; conditional release; discharge; procedure for separate post-acquittal hearing. (1) When a defendant is acquitted on the ground of physical or mental disease, disorder, or defect excluding responsibility, the court shall, on the basis of the report made pursuant to section 704-404, if uncontested, or the medical or psychological evidence given at the trial or at a separate hearing, make an order as follows:
(a) The court shall order the defendant to be committed to the custody of the director of health to be placed in an appropriate institution for custody, care, and treatment if the court finds that the defendant presents a risk of danger to oneself or others and that the defendant is not a proper subject for conditional release; provided that the director of health shall place defendants charged with misdemeanors or felonies not involving violence or attempted violence in the least restrictive environment appropriate in light of the defendant's treatment needs and the need to prevent harm to the person confined and others; or
(b) The court shall order the defendant to be released on such conditions as the court deems necessary if the court finds that the defendant is affected by physical or mental disease, disorder, or defect and that the defendant presents a danger to oneself or others, but that the defendant can be controlled adequately and given proper care, supervision, and treatment if the defendant is released on condition; or
(c) The court shall order the defendant discharged from custody if the court finds that the defendant is no longer affected by physical or mental disease, disorder, or defect, or, if so affected, that the defendant no longer presents a danger to oneself or others and is not in need of care, supervision, or treatment.
The circuit court's consequences jury instruction accurately stated the effect of a verdict of not guilty by reason of mental defect, disease, or disorder, as set forth in HRS § 704-411(1). However, Costa argues that the circuit court should not have given the instruction because HRS § 704-402(2) requires that Costa "request" the instruction before the circuit court may give it. HRS § 704-402(2) provides in pertinent part that when, as here, the defense of not guilty by reason of mental disease, disorder, or defect, is "submitted to the jury, the court shall, if requested by the defendant, instruct the jury as to the consequences to the defendant of an acquittal . . ." based on the defense.
Put simply, under Costa's interpretation, the circuit court may give the consequences jury instruction only when the defendant initiates a request for it. However, such a narrow interpretation of HRS § 704-402(2) is not required by the plain language of the statute, does not comport with the statute's purpose, and would lead to illogical results. See Metcalf v. Voluntary Employees' Benefit Assn of Haw., 99 Hawai`i 53, 58-59, 52 P.3d 823, 829 (2002), quoting S. Foods Group v. State Dept of Educ., 89 Hawai`i 443, 453-54, 974 P.2d 1033, 1043-44 (1999) ("A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable.") Rather, we conclude that the requirement of a "request" is satisfied when, as was the case here, the court suggests the giving of the instruction and the defendant consents.
This reading of the statute is consistent with its purpose, which is to protect the interests of defendants by requiring the court to give the instruction at the option of the defendant. The Supplemental Commentary to HRS 704-402(2) states that "[i]t should be noted that the defendant has the option; the defendant decides whether the defendant wishes the jury instructed on the consequences to the defendant of an acquittal on the ground of physical or mental disease, disorder, or defect . . . ." We may rely on that commentary in interpreting the statute. HRS 701-105 (1993).
This interpretation of the statute is also consistent with its legislative history. In 1967, the Hawai`i Supreme Court ruled that it was not error for a trial court to refuse to give an instruction, which had been requested by the defendant, explaining the consequences of a not guilty by reason of insanity verdict. State v. Moeller, 50 Haw. 110, 123, 433 P.2d 136, 145 (1967). It was against that backdrop that the legislature, in 1973, enacted the bill that was codified as HRS § 704-402(2).[6] See 1973 Haw. Sess. L. Act 136, § 4(a) at 213. In its report on the bill, the House Judiciary Committee noted that "[s]ection 704-402 relating to the defense of physical or mental disease, disorder or defect, is amended to provide for an appropriate instruction to be made by the court to the jury on that issue when such defense is raised and request for instruction is made by the defendant." Hse. Stand. Comm. Rep. No 726, in 1973 House Journal, at 1095-96.
There is nothing in the legislative history to suggest that the legislature considered it significant that the defendant initiated the request, as opposed to agreeing to an instruction that had been suggested by the court. Rather, given the Moeller decision, it is apparent that the legislature's intent was to ensure that a defendant who wanted the instruction would get it.
This interpretation is also consistent with the analysis of the Hawai`i Supreme Court in State v. Amorin, 58 Haw. 623, 574 P.2d 895 (1978), a case in which the defendant specifically requested a consequences jury instruction after the enactment of HRS 704-402(2). In discussing the purpose of the statute, the Hawai`i Supreme Court stated "[i]f the jurors are not informed as to the consequences of an acquittal due to insanity, there is a possibility that they will fear that such an acquittal will necessarily lead to the defendant's release. Consequently, the statute was promulgated to aid the defendant by obviating any possible bias of the jury against a finding of not guilty due to insanity." 58 Haw. at 627-28, 574 P.2d at 898.
In sum, we interpret HRS § 704-402(2) as giving the defendant the right, at his or her option, to have the jury instructed with regard to the consequences of a not guilty by reason of insanity verdict. The statute does not distinguish between defendants who exercise that right by asking that the instruction be given, and those who, like Costa, exercise it by consenting when the instruction is proposed by the court. Accordingly, because the circuit court here complied with HRS 704-402(2), it did not err in giving the consequences jury instruction.[7]

2. The court's instructions were not inconsistent
Costa also argues that the circuit court erred in giving the consequences jury instruction because "the instruction not to consider [the] penalty was inconsistent with the instruction of the consequence of a verdict of not guilty by reason of mental disease or defect." Specifically, Costa asserts that by giving the consequences jury instruction and then instructing the jury that they "must not discuss or consider the subject of penalty or punishment in your deliberations of this case[,]" the circuit court "did not cure the instruction that the defendant could be released if he is acquitted-it exacerbated it."
However, Costa's argument is contrary to the Hawai`i Supreme Court's decision in Amorin, supra. The circuit court in Amorin gave a consequences instruction at the request of the defendant. However, the court added the following language, to which the defendant objected:
This instruction is given only for the purpose of informing you of the consequences to the defendant that may result from an acquittal on the ground of physical or mental disease or disorder or defect excluding responsibility. It is not meant in any way to influence your decision (emphasis added).
58 Haw. at 625-26, 574 P.2d at 897.
The Hawai`i Supreme Court affirmed, and noted:
The role of the jury is to determine only the facts and apply the law as given by the court. The jury should be concerned only with the evidence properly presented and not with the possible punishment of the defendant. In determining the factual issue of insanity, the jury should not be influenced by the extraneous consideration of the consequence of a finding of insanity wholly unconnected and apart from the evidence. Thus, the thrust of Hawai`i Penal code § 704-402(2) is limited. It is to be used only to inform the jury of the consequences of an acquittal by insanity. Such an instruction should be tantamount to a mere news item and should not be used to influence the decision of the jury in any way.
Id. at 628, 574 P.2d at 898-99.
The substance of the instruction given by the circuit court here is similar to that approved by the Hawai`i Supreme Court in Amorin. While the circuit court gave the additional admonishment that "[y]ou must not discuss or consider the subject of penalty or punishment in your deliberations of this case," that admonishment is consistent with the court's decision in Amorin and we fail to see how it distinguishes Amorin from this case. Accordingly, this argument is without merit.

B. Costa's Trial Counsel Was Not Ineffective
Costa argues that his trial counsel was "ineffective for failing to object to the consequence portion of the jury instruction . . . [,] in permitting the State-requested instruction to be `given by agreement[,] `. . . [because there] can be no valid strategic reason for such a decision."[8] However, Costa's contentions are without merit.
The standard for ineffective assistance of counsel claims is, "[w]hen viewed as a whole, was the assistance provided to the defendant within the range of competence demanded of attorneys in criminal cases?" State v. Keomany, 97 Hawai`i 140, 146, 34 P.3d 1039, 1045 (App. 2000) (citation and internal quotation marks omitted).
[T]he defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense.
Id. at 146, 34 P.3d at 1045 (citation omitted).
Furthermore, a "[d]efense counsel's tactical decisions at trial generally will not be questioned by a reviewing court." State v. Antone, 62 Haw. 346, 352, 615 P.2d 101, 106 (1980) (citation omitted).
Costa's trial counsel was not ineffective as there was a legitimate tactical basis for not objecting to the consequences jury instruction. As discussed above, the Supreme Court of Hawai`i has stated that the purpose of HRS § 704-402(2) is to eliminate "any possible bias of the jury against a finding of not guilty due to insanity." Amorin, 58 Haw. at 628, 574 P.2d at 898. Thus, by not objecting, Costa's trial counsel was making a tactical decision to reduce any bias by informing the jury that a finding of not guilty by reason of mental defect, disease or disorder, would not automatically mean that Costa would go free. If the court had not given the consequences instruction, the jury would have been left to speculate about whether Costa would be released if he was found not guilty by reason of insanity. Thus, Costa's counsel's actions do not reflect a "lack of skill, judgment, or diligence[.]" See Keomany, 97 Hawai`i at 146, 34 P.3d at 1045 (citation omitted).

CONCLUSION
The May 26, 2006 Judgment of Conviction and Sentence entered in the Circuit Court of the Fifth Circuit is hereby affirmed.
NOTES
[1] The Honorable Kathleen N.A. Watanabe presided.
[2] HRS § 707-701.5 (1993) states:

(1) Except as provided in section 707-701, a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.
(2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.
[3] HRS § 704-400 (1993) entitled "Physical or mental disease, disorder, or defect excluding penal responsibility," states in pertinent part that:

(1) A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.
[4] For ease of reference, we will refer to this as the "consequences jury instruction."
[5] Article 1, Section 5 of the Constitution of the State of Hawai`i provides that:

No person shall be deprived of life, liberty, or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.
[6] When enacting legislation, the legislature is presumed to know the law at the time of the enactment, including rulings of the Hawai`i Supreme Court. State V. Reis, 115 Hawai`i 79, 97, 165 P.3d 980, 998 (2007).
[7] To the extent that Costa is suggesting that the giving of such an instruction in compliance with HRS § 704-402(2) violated Costa's due process rights under with the Hawai`i or United States constitutions, we reject that contention. Due process does not preclude a court from giving such an instruction when the defendant consents to it.
[8] As discussed in the Background section of this opinion, and as conceded by defense counsel at oral argument, the record shows that the State did not request this instruction.