**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000457
20-MAY-2022
07:51 AM
Dkt. 79 MO**

NO. CAAP-20-0000457

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
LOGOVII TALO, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1PC161000667)


MEMORANDUM OPINION
(By: Leonard, Presiding J., Hiraoka, J.; and
Circuit Court Judge Ashford, in place of Ginoza, C.J.,
and Wadsworth, Nakasone and McCullen, JJ., all recused)

Defendant-Appellant Logovii Talo (**Talo**) appeals from
the June 18, 2020 Order of Resentencing Revocation of Probation
Notice of Entry (**Resentencing Order**) entered by the Circuit Court
of the First Circuit (**Circuit Court**).[1]

I.    BACKGROUND

A.    Procedural History

On April 27, 2016, Plaintiff-Appellee the State of
Hawaiʻi (**State**) charged Talo by Felony Information with Assault

_____

[1]    The Honorable Karen T. Nakasone presided.

in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-711(1)(a) (2014) and/or HRS § 707-711(1)(b) (2014).[2] On April 4, 2017, Talo pled no contest to Assault in the Second Degree.  On June 29, 2017, the Circuit Court entered a Judgment of Conviction and Probation Sentence Notice of Entry (**Judgment of Conviction**), sentencing Talo to four (4) years of probation with special terms and conditions and one day imprisonment, with credit for time already served.

The Form K (plea) provided that the maximum imprisonment/fine was five (5) years and $10,000, with no extended term of imprisonment or mandatory minimum term of imprisonment.  Talo's terms and conditions of probation provided, in relevant part:

> 8.  Your further special conditions of probation are as follows:  You Shall:
>
> a.  Follow all reasonable instructions which are given to you by your probation officer;
>
> b.  Not own or possess any firearms or ammunition. If you have any firearms or ammunition, you must

---

[2]  HRS § 707-711(1)(a),(b) provides:

> **§ 707-711  Assault in the second degree**.  (1)  A person commits the offense of assault in the second degree if:
> (a)  The person intentionally or knowingly causes substantial bodily injury to another;
>
> (b)  The person recklessly causes serious or substantial bodily injury to another[.]
>
> . . . .
>
> (2)  Assault in the second degree is a class C felony.

immediately turn them in to the appropriate
county police department;

YOUR FURTHER SPECIAL TERMS AND CONDITIONS OF
PROBATION ARE ATTACHED.

WARNING:
IF YOUR WHEREABOUTS BECOME UNKNOWN TO YOUR PROBATION
OFFICER BECAUSE OF YOUR FAILURE TO KEEP HIM/HER INFORMED,
THE COURT MAY ORDER YOUR ARREST.  UPON ANY FAILURE TO COMPLY
WITH EACH OF THE TERMS AND CONDITIONS OF YOUR PROBATION,
INCLUDING SPECIAL CONDITIONS, THE COURT MAY REVOKE YOUR
PROBATION AND SENTENCE YOUR [sic] TO PRISON OR CHANGE OR ADD
TO THE CONDITIONS OF YOUR PROBATION.

YOU ARE FURTHER INFORMED THAT YOU ARE PROHIBITED FROM OWNING
OR POSSESSING ANY FIREARM OR AMMUNITION PURSUANT TO HRS §
134-7.

. . . .

**YOU SHALL:**

. . . .

B.   Not own or possess any firearms or ammunition.  If you
     have any firearms or ammunition, you must immediately
     turn them in to the appropriate county police
     department;

. . . .

Q.   Submit at reasonable times to a search of your person,
     residence, vehicle, or other sites and property under
     your control by any probation officer, with or without
     a warrant, based on reasonable suspicion that illicit
     substance(s) or other contraband, may be in the
     place(s) of a search.  Any illicit substance(s) or
     contraband found or observed in such a search may be
     seized[.]

On June 29, 2017, Talo signed an Acknowledgment of

Receipt of Conditions of Probation/DAGP/DANCP Supervision.  Talo

and his probation officer signed the terms and conditions of

probation on July 20, 2017.

On December 6, 2019, the State filed a Motion for

Revocation of Probation, Resentencing and Issuance of Bench

Warrant (**Motion to Revoke Probation**) and moved for the issuance

of a Bench Warrant for Talo for violating the terms and

3

conditions of probation pursuant to HRS § 706-625 (2014),[3] based in part on the recovery of a firearm and ammunition from Talo's residence stemming from a warrantless search executed on December 6, 2019.  According to a Warrantless Search Report, Search Unit Supervisor for the Adult Client Services Branch, Eleanor Kekauoha (**Kekauoha**), received confidential information that Talo was in possession of a firearm.  On October 7, 2019, Kekauoha contacted the Honolulu Police Department (**HPD**) requesting security for a possible warrantless search.

The Warrantless Search Report included that Talo failed to report a correct address and did not report to his probation

---

[3]     HRS § 706-625 provides, in relevant part:

> **§ 706-625  Revocation, modification of probation conditions.**  (1) The court, on application of a probation officer, the prosecuting attorney, the defendant, or on its own motion, after a hearing, may revoke probation except as provided in subsection (7), reduce or enlarge the conditions of a sentence of probation, pursuant to the provisions applicable to the initial setting of the conditions and the provisions of Section 706-627.
>
>      . . . .
>
>      (3)  The court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or has been convicted of a felony.  The court may revoke the suspension of sentence or probation if the defendant has been convicted of another crime other than a felony.
>
>      (4)  The court may modify the requirements imposed on the defendant or impose further requirements, if it finds that such action will assist the defendant in leading a law-abiding life.
>
>      (5)   When the court revokes probation, it may impose on the defendant any sentence that might have been imposed originally for the crime of which the defendant was convicted.

appointments on October 10 and October 17, 2019.  On October 25, 2019, Talo confirmed his correct address.

The report also provided that Kekauoha met with HPD on December 4, 2019, for a briefing concerning the upcoming warrantless search, and she also met with the Adult Probation Search Unit on December 5 and December 6, 2019, for briefing. The Adult Probation Search Unit, with HPD present for security, executed a warrantless search of Talo's residence at approximately 10:00 a.m. on December 6, 2019, which resulted in the recovery of a firearm and ammunition.  Talo was then arrested on a Probation Revocation Warrant, as well as for Ownership/Possession Prohibited, Possession of a Prohibited Weapon; however, as discussed herein, Talo was never "conferred" to the prosecutor's office for charges related to such non-probation-related offenses or otherwise charged with those offenses.

The Declaration of Supervising Probation Officer Dwight S. Sakai (**Sakai**) accompanied the Motion to Revoke Probation and provided several bases for revoking Talo's probation including, in relevant part:

> 5.    That in a Petition for an Order for Protection, filed on June 28, 2019, in Case Number FC-DA No. 19-1-1456, by [Talo]'s wife, Jenifer L.P. Talo [(**Jenifer**)], she stated that [Talo] had access to firearm(s) from "family and friends who has weapons."  That Petition was dissolved without prejudice as of July 10, 2019;
>
> 6.    That in a Petition for an Order for Protection, filed on July 26, 2019, in Case Number FC-DA No. 19-1-1676, by [Jenifer], who stated that [Talo] had access to firearm(s) from "family and friends who has weapons."

5

That Petition was dissolved without prejudice as of August 7, 2019;

7.    That on December 6, 2019, a warrantless search was executed on [Talo], which resulted in the recovery of ammunition from his vehicle;

8.    That [Talo], in the City and County of Honolulu, State of Hawai'i, and within the jurisdiction of this court and while the terms and conditions of probation were still in effect, violated the terms and conditions of probation as follows:

<u>X</u>    That [Talo] failed to report to the [Administrative Risk Management Section (**ARMS**)] Section on April 3, 2019 and October 10, 2019, despite instructions to do so;

<u>X</u>    That on November 7, 2018, [Talo] reported late to his appointment with the ARMS probation officer;

<u>X</u>    That [Talo] failed to notify the ARMS Section of the change in his address, prior to moving on March 1, 2019;

<u>X</u>    That [Talo] failed report the correct address to the ARMS Section, which resulted in the return of the appointment letter to the ARMS Section, undeliverable, and with a postmark on the envelope, indicating that the address was incorrect;

<u>X</u>    That [Talo] failed to notify the ARMS Section of the change in the status of his telephone number, which resulted in the ARMS Section's inability to contact [Talo] by phone on October 21, 2019;

<u>X</u>    That a firearm and ammunition were recovered from [Talo]'s residence.

On December 12, 2019, the State filed a Motion to Revoke Bail or, in the Alternative, to Increase [Talo]'s Bail (**Motion to Increase Bail**).  On December 12, 2019, a Report of Probation Officer was filed, noting that Talo's case was assigned to ARMS and indicated, *inter alia*, various alleged probation violations.  On December 13, 2019, the Circuit Court granted the State's Motion to Increase Bail and bail was set at $100,000.00. On January 10, 2020, a Supplemental Report of Probation Officer

was filed providing that the investigation on Talo's pending firearms case was still pending.  This report provided:

> On January 9, 2020, [HPD] Detective David Lacuata [(**Detective Lacuata**)], who is conducting the investigation on [Talo]'s pending firearms case, reported that the investigation is still pending.

On January 16, 2020, the Circuit Court held a hearing on the Motion to Revoke Probation, which was based on the alleged violations set forth in Sakai's declaration, including:  (1) Talo's failure to report on April 3, 2019, and October 10, 2019; (2) Talo reporting late on November 7, 2019; (3) Talo's failure to notify probation of change of address; (4) Talo's failure to report correct address; (5) Talo's failure to notify probation of change in telephone number; and (6) the firearm and ammunition recovered from Talo's residence.  Talo made an oral motion to suppress the evidence gathered as a result of the warrantless search, including the firearm and ammunition (**Motion to Suppress Evidence**).  The Circuit Court considered the Motion to Suppress Evidence as a challenge to the reasonableness of the warrantless search under State v. Propios, 76 Hawaiʻi 474, 879 P.2d 1057 (1994).  The Circuit Court also noted:

> Let me put this on record before we begin the hearing. I did want to put both sides on notice that the Court does have a concern that by proceeding on the firearm and ammunition probation violation, and if defendant is found guilty of that violation and there's a consequence, and he gets a penalty for that violation, it may create a double jeopardy type problem if the defendant gets a penalty from this court on the firearm and ammunition violation and then he's subsequently charged for the criminal offense based on this firearm and ammunition, which would be the same conduct.  I do have concerns, and I've articulated those concerns off record leading up to today, and the State is

> aware of the Court's concern, but the State still wants to proceed on this violation, right?

As discussed further below, the Circuit Court considered testimony from Talo's wife, Jenifer, probation supervisor Kekauoha,[4] and probation officer Shawn Naito (**PO Naito**).

On January 17, 2020, Kekauoha submitted and filed a Second Supplemental Report of Probation Officer (**Second Supplemental Probation Report**), which provided, *inter alia*, that on September 30, 2019, HPD Sergeant Michelle Phillips (**Sgt. Phillips**) called Kekauoha to inform her that Jenifer and one of their children had "gone to Wahiawa Police Station, requesting for a probation revocation warrant" for Talo because he was in possession of a firearm.  Jenifer stated she was afraid of Talo, but she did not want to file a police report.

The Second Supplemental Probation Report further provided that on September 30, 2019, Kekauoha left Jenifer a voicemail, and on October 1, 2019, Jenifer spoke with Kekauoha over the phone, Jenifer confirmed that Talo had a firearm, which Jenifer believed to be a shotgun, that it was wrapped in a "lavalava," and Talo had put it in Jenifer's closet.  Jenifer had also reported that Talo had ammunition in his vehicle.  The report stated that Jenifer and one of her children met with

---

[4]      Kekauoha testified that she was "the supervisor for the section that is supervising the defendant, as well as the supervisor for the search unit with adult client services branch."

probation officers and confirmed that the firearm continued to be in the residence and that ammunition was in Talo's vehicle. The report also provided that the warrantless search was executed on December 6, 2019, and at the conclusion of the search, HPD notified Kekauoha that they would arrest Talo on the probation revocation warrant and gun-related offenses.

At a January 17, 2020 hearing, the Circuit Court denied the Motion to Revoke Probation to the extent that it was premised on non-firearm violations and permitted Talo to file a supplemental memorandum in support of the Motion to Suppress Evidence.

Talo's supplemental memorandum primarily argued that the warrantless search of Talo's residence on December 6, 2019, "was unreasonable notwithstanding the existence of an objectively valid probationary purpose, because the avowed purpose was in reality a subterfuge designed to facilitate a criminal investigation."[5] In response, the State argued that the Adult Probation Department (**APD**) had reasonable suspicion based on specific and articulable facts that Talo possessed a firearm and ammunition. Talo filed a reply memorandum, contending that the warrantless search was conducted for an improper purpose based on the APD and HPD "work[ing] in concert to actively create a new case against [Talo] by undertaking a warrantless search[.]"

---

[5]    Talo cited State v. Fields, 67 Haw. 268, 686 P.2d 1379 (1984); Commonwealth v. Brown, 361 A.2d 846 (Pa. Super. Ct. 1976); Propios, 76 Hawaiʻi at 474, 879 P.2d at 1057.

On January 24, 28, and February 25, 2020, the Circuit Court held further hearings on the State's Motion to Revoke Probation and Talo's Motion to Suppress Evidence.  The Circuit Court considered testimony from Detective Lacuata, search and seizure assistant supervisor Brook Mamizuka (**Mamizuka**), Kekauoha, Talo's and Jenifer's son (**Son**), and Jenifer.  At the February 25, 2020 hearing, the Circuit Court orally denied Talo's Motion to Suppress Evidence.  On March 12, 2020, the Circuit Court entered Findings of Fact, Conclusions of Law, and Order Denying Defendant's Oral Motion to Suppress Evidence (**Order Denying Motion to Suppress Evidence**).

On June 18, 2020, the Circuit Court held a further hearing on the State's Motion to Revoke Probation and granted the State's motion based on the firearm and ammunition violations; the court sentenced Talo to a term of imprisonment of five years. On June 18, 2020, the Circuit Court entered the Resentencing Order, sentencing Talo to a term of imprisonment for five years with credit for time served.

On July 16, 2020, Talo timely filed a notice of appeal.

B.    Events Prior to the Warrantless Search

PO Naito testified that he met with Talo on June 29, 2017, to review the temporary probation terms and conditions.  PO Naito stated that he reviewed the official probation terms and conditions one by one with Talo.  PO Naito testified that he explained the penalty for violating any of the probation

conditions and that Talo appeared to understand the terms and conditions.  PO Naito signed the form and witnessed Talo signing and dating the form.

Jenifer testified that she had been married to Talo for about three years and in a relationship with him for over sixteen years.  Jenifer also testified that she had four biological children with Talo and two other children that Talo helped raise.  The children were ages 9, 11, 12, 13, 16, and 19 at the time.  In June 2019 and July 2019, Jenifer had filed two separate Petitions for an Order for Protection against Talo, requesting a Temporary Restraining Order (**TRO**) stemming from, *inter alia*, Talo stealing Jenifer's airport badge and federal badge, and threatening to kill her.[6]  Jenifer's June 2019 petition provided that Talo had access to firearms and "has friends that have weapons." Jenifer's July 2019 petition also alleged that Talo "may own/possess/have access to a weapon," and that "[h]e has family and friends who has [sic] weapons."  Jenifer testified that she filed them because "for the past year we've been having issues, marital issues and marital problems, and it's been getting difficult, so I had to file them on behalf of my -- in order to save my job."  Jenifer testified that she was concerned about Talo stealing her badges.

---

[6]     The Order for Protection provided that Jenifer worked at the Transportation Security Administration (**TSA**) airport.

Jenifer testified that on September 30, 2019, Jenifer and Son went to the Wahiawa Police Station to ask "what would happen if my husband, who was on parole, had a [sic] illegal firearm?"  Jenifer said that she asked HPD Sgt. Phillips if Jenifer would be held responsible for an illegal firearm in her residence and that her children had mentioned the firearm. However, Jenifer maintained that it was a hypothetical question, and at that time, she had not seen the illegal firearm or ammunition.  Jenifer testified that she did not make a report. Jenifer further testified that PO Naito called her and directed her to Kekauoha to discuss the issue about the firearm and ammunition.

Following Jenifer's visit to the police station, Sgt. Phillips contacted Kekauoha.  Kekauoha testified that she asked Sgt. Phillips to file a police report to document the visit and Sgt. Phillips completed a report.

Kekauoha testified that she first spoke with Jenifer over the phone on October 1, 2019, and Jenifer stated that Talo was in possession of a firearm, which Jenifer believed was a shotgun.  Jenifer testified that she told Kekauoha that she believed Talo had a firearm in her room at that time.  Jenifer further testified that she told Kekauoha that four of her younger children saw the firearm in the house, and described it as "one that they see on top their video games."  Jenifer also testified that Son told her that he had seen a gun in the house, but he did

not describe it.  However, after October, Jenifer testified that there were "very long pauses in between" speaking to Kekauoha because Jenifer did not want to talk anymore.  Jenifer testified that she never saw a gun in the house.  Kekauoha testified that she began a probation violation investigation on October 1, 2019, after she spoke with Sgt. Phillips and Jenifer.  Mamizuka testified that at some point after this, they were looking at "possibly doing a warrantless search."

Mamizuka testified that she met with Jenifer and Son at the probation office to verify the facts related to the firearm and the ammunition.  Mamizuka further testified that:

> A.    Jenifer had described that there was a firearm in her household.  It was in their bedroom closet.  Um, it was behind a purple suitcase and that she wanted it removed from -- her household and that -- he had been previously playing with it in front of minors.
>
> Um -- there also was concern -- she had described to us that -- his temperament, she quite -- she couldn't really understand because he would go from zero to a hundred in his temperament.  Zero being, you know, very calm, and then a hundred where it's explosive.  That he had broken their door in their apartment.
>
> Um -- she also described that there was ammunition that was -- in a ziplock bag in the trunk of his car -- and that it was in a -- duffle bag.
>
> And -- she also kinda described -- I guess their interaction and their relationship -- with one another and I guess that was very concerning to me.  She had described that -- I -- I believe it was a couple days before -- she had tried to get ready for work and she had put on unifor -- her TSA uniform and he had cut, um -- her uniform up.  He had cut the breast pockets and the inseam of her uniforms.
>
> Um -- there also was -- some text messaging that -- that -- Talo's son had shown us and -- you know, threatening that the -- that Talo would be taking the children away from her.
>
> . . . .
>
> Q     And you described -- well, you said that [Jenifer] said that she had seen ammunition in a ziplock,

> stored in a ziplock and then stored in a duffle bag then stored in the trunk of [Talo]'s car?
>
> A     Yes.
>
> Q     Was she able to actually describe how that ammunition looked?
>
> A     She did.  She said it was red.

Mamizuka testified that she felt Jenifer's life was in danger after the November 19, 2019 meeting.  However, she did not immediately call the police because the "focus was to remove the firearm like Miss -- like Jenifer had asked us to do."  Mamizuka testified that, in preparation for the warrantless search, Kekauoha began "the case agent portion, which is a lot of the footwork and the paperwork."  Mamizuka testified that she came in "when we're getting or preparing for the search and the debriefing with the staff," but this was not intertwined with HPD.  Mamizuka explained that the staff briefing involved teaching the probation office staff how to conduct the search and what their roles would be in the search.  Mamizuka also stated:

> So in this case we had explained that myself and two other probation officers would be transporting [Talo].  So we would be doing it in a State car.  We would go through that protocol of how to do that and -- because we were doing it purely -- three of us, the three probation officers, HPD was not in -- they had told us they would not get involved in any of the -- transport.  They were primarily there -- for security purposes.
>
> Then we would describe to -- the probation officers that are going along with us how we would be searching, common areas, and only areas that are occupied by [Talo].
>
> Q     Okay.  And at this point during the briefing process, is there any intertwinement between probation's work and HPD?
>
> A     No.  We're not making contact with him [sic] yet.
>
> . . . .

14

Q       -- you had said that HPD actually said they would not partic -- what did you say that they would not do, HPD said they would -- they declined?  What --

A       Transportation.  They would not give [Talo] any transportation to -- to his home.  We would have to do all of the transportation.  So from the Circuit Court office to Wahiawa.

Kekauoha testified that she believed reasonable suspicion of a probation violation existed because she had information from Sgt. Phillips based on Jenifer's visit to the Wahiawa Police Station, the two Petition[s] for an Order for Protection, an October 1, 2019 phone call, and the November 19, 2019 meeting.  In addition, Kekauoha testified:

Q       Describe Jenifer -- just I guess what did Jenifer say about the firearm and ammunition at that November 19th meeting?

A       She confirmed that the firearm was, um -- in the residence, in the bedroom, in a closet.

Q       So as of November 19th, 2019, Jenifer said, yes, the firearm is still there.

A       Yes.

. . . .

Q       And how -- did you ever speak to Jenifer between -- about the gun and ammunition between November 19th and the December 6th, 2019 search?

A       Not directly.

Q       Did you speak to her indirectly, like voicemails --

A       We --

Q       -- or anything?

A       -- we were playing phone tags.

Q       Okay.  Why did it take -- I guess how -- why did it take so long between -- if you first learned about the gun and firearm in mid-October, why did it take until December 6th to do the search?

A       First of all, we had to confirm [Talo]'s residence.  On the documents that we had in the probation,

15

um -- file, he didn't put down his apartment number, and an initial letter was sent to him by [PO Naito].

And we -- based on what he -- [Talo] had written the last time he wrote down his address, there was no street number.  So the initial appointment letter was sent to the Ehoeho Avenue address without the apartment number and that was returned and the postmark indicated that the address is insufficient.

So subsequent letters were sent, but [Talo] did not report for those appointments.  And subsequently, I found out from Jenifer that they had lost the mailbox key.  So until she was able to get a mailbox key, we couldn't get [Talo] into the office.

So he finally reported on I believe it was October 25th.  When he first reported.

Q    Okay.  Did you receive a voicemail from Jenifer in December indicating whether or not she would be present at the December 6th search?

A    I did.  That was on -- that was on December the 3rd.  Because I left her a voicemail message on that date, and then she left a voicemail message after that.

Kekauoha further testified that the purpose of the warrantless search was to remove the firearm for public safety purposes and for rehabilitative purposes because it was intended to ensure Talo was "complying or following the terms and conditions of probation."

C.    The December 6, 2019 Warrantless Search

When Talo reported for his probation office appointment on December 6, 2019, probation officers transported Talo back to his residence in a state vehicle.  Talo was not handcuffed or under arrest at that time.  PO Naito testified that he was a member of the search team and arrived at Talo's residence "between maybe 9 a.m., 9 to 10 a.m. on December 6," and HPD and Son were at the residence.  Approximately ten people were at Talo's house at the time of the search, including five probation

16

officers and five HPD officers.  PO Naito testified that the search started in the living room and only one bedroom was searched.  He also stated that Talo and HPD stayed in the living room while the search was being conducted.

Mamizuka testified that she asked Talo where his room was, and Talo told her that he slept in the living room, but his clothes were in the room next to the living room.  Subsequently, Mamizuka found the gun in the bedroom where Talo told her his clothes were located.  Mamizuka stated that she lifted the mattress and "between the mattress and the box spring was the shotgun wrapped in a turquoise lavalava."  Mamizuka stated that she then saw the ammunition in a clothes hamper and only the probation officers touched and looked for the firearm and ammunition.  Mamizuka testified the HPD officers were not near the probation officers and were in the living room or outside, but not inside the bedroom.  Mamizuka further testified that the probation staff searched Talo's car.  Mamizuka testified that HPD took the firearm and ammunition to store because probation was not trained to handle those items.  Mamizuka's testimony provided that HPD arrested Talo, but probation staff did not "intertwine" with HPD after December 6, 2019.

PO Naito stated that he left the Talo residence with the other probation officers around 2 p.m., but that the SWAT team was still at the residence.  PO Naito also testified that

the SWAT team was in the residence while the search was going on, and once the gun was recovered, it was given to the SWAT team.

Detective Lacuata testified that on December 6, 2019, he was assigned to a criminal case investigation of Talo regarding illegal ownership of a firearm.  However, he also testified that he was instructed to halt any criminal investigation stemming from the probation search arrest, and his work on the case terminated, on December 6, 2019.  Detective Lacuata testified that his investigation was "pretty much closed," but that he had yet to submit a closing report.  He testified that although his criminal investigation was halted, his investigation then focused on confirming the probation violation.  Detective Lacuata had conducted an audio-recorded interview with Jenifer and Son, but its purpose was to confirm certain information related to the probation violation.

Detective Lacuata also called Son on December 7, 2019, but the call was to provide him with instructions to pick up Talo from the police station.  He also spoke with Talo on December 7, 2019, to go over an HPD-81 form.  Detective Lacuata testified that this was part of his administrative report for closing, and that even if had Talo confessed, there would still have been no criminal case against Talo.  On January 9, 2020, Detective Lacuata informed Kekauoha that the investigation was still pending, but only because certain results such as test-fires and fingerprint analyses were still pending.  The State represented

18

on the record that Talo would not be subject to criminal prosecution stemming from the firearm and ammunition seized in the December 6, 2019 search.

II.  POINTS OF ERROR

Talo raises two points of error on appeal, challenging Findings of Facts (**FOFs**) 1, 2, 21, 23, 24, 25, 28, 32, 33, 34, 35, 36, 37, and 38, and Conclusions of Law (**COLs**) 5 and 6, and arguing that the Circuit Court:  (1) erred in denying Talo's Motion to Suppress Evidence; and (2) abused its discretion in sentencing Talo to an open term of imprisonment of five years.

III. APPLICABLE STANDARDS OF REVIEW

Appellate courts "review the circuit court's ruling on a motion to suppress de novo to determine whether the ruling was 'right' or 'wrong.'"  State v. Keanaaina, SCWC-17-0000898, 2022 WL 854476, at *5 (Haw. Mar. 22, 2022) (quoting State v. Kauhi, 86 Hawaiʻi 195, 197, 948 P.2d 1036, 1038 (1997)).

"[A] sentencing judge generally has broad discretion in imposing a sentence."  State v. Koch, 107 Hawaiʻi 215, 219, 112 P.3d 69, 73 (2005) (citing State v. Gaylord, 78 Hawaiʻi 127, 143-44, 890 P.2d 1167, 1183-84 (1995)).  "The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision."  Id. at 219-20, 112 P.3d at 73-74 (citation omitted).

"[W]hether a particular search is improper 'is a question of fact subject to the clearly erroneous standard of

review.'"  Propios, 76 Hawaiʻi at 481, 879 P.2d at 1064 (quoting

U.S. v. Consuelo-Gonzalez, 521 F.2d 259, 267 (9th Cir. 1975)).

An appellate court reviews a "circuit court's findings of fact

under a 'clearly erroneous standard.'"  State v. Rodrigues, 145

Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019).  A trial court's FOF

"is clearly erroneous when (1) the record lacks substantial

evidence to support the finding, or (2) despite substantial

evidence in support of the finding, the appellate court is

nonetheless left with a definite and firm conviction that a

mistake has been made."  State v. Quiday, 141 Hawaiʻi 116, 121,

405 P.3d 552, 557 (2017) (quoting State v. Eleneki, 92 Hawaiʻi

562, 564, 993 P.2d 1191, 1193 (2000)).  However, "an appellate

court will not pass issues dependent upon credibility of

witnesses and the weight of the evidence; this is the province of

the trial judge."  State v. Hicks, 113 Hawaiʻi 60, 70, 148 P.3d

493, 503 (2006) (quoting State v. St. Clair, 101 Hawaiʻi 280,

287, 67 P.3d 779, 786 (2003)).

        Conclusions of law are reviewed de novo.  Rodrigues,

145 Hawaiʻi at 494, 454 P.3d at 435.  "A conclusion of law that

is supported by the trial court's findings of fact and that

reflects an application of the correct rule of law will not be

overturned."  Quiday, 141 Hawaiʻi at 122, 405 P.3d at 558

(citation omitted).

IV.   DISCUSSION

   A.   The Motion to Suppress Evidence

      Talo challenges various FOFs and argues that the Circuit Court erred in denying Talo's Motion to Suppress Evidence because the warrantless search of Talo's residence was unreasonable.

      The Hawaiʻi Supreme Court has described a warrantless search as "a creature of judicial ingenuity presumably founded on the discretion vested in the sentencing court to saddle a probationer with any condition 'reasonably related to [his] rehabilitation . . . and not unduly restrictive of his liberty or incompatible with his freedom or conscience.'" Fields, 67 Haw. at 276, 686 P.2d at 1386 (citation omitted).  Thus, a probation condition is valid "to the extent that it may serve the ends of rehabilitation." Id. at 277-78, 686 P.2d at 1386-87.  A probation officer's special role as a "social therapist in an authoritative setting" permits the probation officer to conduct a warrantless search of the probationer's person, property, and place of residence because it "serves a legitimate correctional purpose" and "may contribute to [] rehabilitation." Id. at 280, 686 P.2d at 1388-89 (citations omitted).

      In Fields, the supreme court explained that the "desired rehabilitation" of a probationer depends upon the probation officer's "ability to gain 'a thorough understanding of the probationer and his environment, including his personal

21

habits, his relationships with other persons, and what he is doing, both at home and outside it.'" Id. at 280, 686 P.2d at 1389 (brackets omitted) (quoting Latta v. Fitzharris, 521 F.2d 246, 249 (9th Cir. 1975).  However, a warrantless search must nevertheless be reasonable, such that it is supported by a "reasonable suspicion supportable by specific and articulable facts."  Id. at 283, 686 P.2d at 1390.

> The supreme court has determined that:
>
>> Although probationers are subject to restrictions to which the average person is not subjected, a probationer still maintains the right to a significant degree of privacy.  In State v. Fields, 67 Haw. 268, 686 P.2d 1379 (1984), this court held that a probationer, like a parolee, may be subjected to warrantless searches by her probation officer.  Id. at 279-81, 686 P.2d at 1388-89.  The warrantless search must be reasonable, however, even if carried out as a condition of probation.  To be reasonable, the facts of each case must show that the search was justified by a reasonable suspicion supported by specific and articulable facts that probation was being violated. Id. at 281, 283, 686 P.2d at 1389, 1390.
>>
>> Because this court has determined that reasonable warrantless searches of probationers are constitutional, the only question remaining is whether the search of [defendant's] residence was reasonable.  The general rule is that
>>
>>> [warrantless] search[es] carr[y] an initial presumption of unreasonableness.  To overcome this presumption, the State must show that the facts of the case justified the . . . search[] without a warrant and that the search itself was no broader than necessary to satisfy the need which legitimized departure from the warrant requirement in the first place.
>>
>> State v. Kaluna, 55 Haw. 361, 363, 520 P.2d 51, 55 (1974) (citations omitted and emphasis added).

Propios, 76 Hawaiʻi at 477, 879 P.2d at 1060.

Here, as in Propios, "the question of reasonableness centers on the participation of the police in the search."  Id. Generally, "police participation in a warrantless residential

22

search of a parolee has been deemed reasonable so long as the underlying search was conducted for a supervisory purpose, and not as a subterfuge for subsequent criminal prosecution." Id. at 478, 879 P.2d at 1061.  Accordingly, police officers "may participate in [a warrantless search] provided that the search is for legitimate probationary purposes and not designed as a ruse to facilitate the gathering of evidence for prosecution of new criminal acts." Id. at 485, 879 P.2d at 1068.  Thus, "a warrantless probationary search premised upon an initially valid rehabilitative purpose may nonetheless become tainted by subsequent abuse of that privilege." Id. at 480, 879 P.2d at 1063.

In Propios, the search of a probationer's residence was unreasonable because "notwithstanding the existence of an objectively valid probationary purpose, . . . the avowed purpose was in reality a subterfuge designed to facilitate a criminal investigation." Id.  The supreme court noted that the prosecution had demonstrated specific and articulable facts giving rise to a reasonable suspicion sufficient to support a warrantless search because the probationer admitted to her probation officer that she had used illegal drugs and her boyfriend was a drug dealer. Id.  The supreme court also determined that the probation officers acted reasonably when they contacted police "to obtain protection and assistance" based on the potential for danger. Id.

23

The supreme court nevertheless concluded that the warrantless search was unreasonable because the "police 'took over' the search nominally conducted by the APD officers in order to gather evidence for use in a criminal prosecution."  Id. at 480-481, 879 P.2d at 1063-64.  "The search was improper not because of mere police participation, but because it was actuated by an intent to pursue future criminal prosecution rather than a desire to advance otherwise valid probationary purposes." Id. at 487, 879 P.2d at 1070.  The testimony in Propios revealed that a police officer was given permission to go ahead with a warrantless search, and the police played a "more active part in the search."  Id. at 482, 879 P.2d at 1065.  Notably, the testimony in Propios revealed that a co-defendant led a police officer to a bedroom alone where drugs were found, and the supreme court stated that "the apparent fact that [a police officer] and [co-defendant] were alone in the bedroom for unexplained reasons raises a question as to whether [the police officer] somehow influenced [co-defendant's] 'voluntary' revelation."  Id. at 485, 879 P.2d at 1068.  Further, in Propios a police officer confirmed that he accompanied the co-defendant into the co-defendant's bedroom to conduct an investigation from a police standpoint.  Id.  Thus, the supreme court concluded that probation officers and police officers "worked in concert to actively create a new case against" the defendant.  Id. at 487, 879 P.2d at 1070.  For these reasons, the supreme court affirmed

24

the order granting the defendant's motion to suppress the evidence obtained as a result of the warrantless search.  Id.

Here, unlike in Propios, there is no indication that the HPD and APD worked in concert together to gather evidence for a new criminal prosecution, and HPD did not "take over" the search at any time.  Both Mamizuka and Kekauoha testified that the purpose of the warrantless search was to investigate a probation violation involving possession of a firearm and ammunition.  APD planned and executed the search while HPD provided security and to recover and store any firearms or ammunition.  HPD declined to even provide transportation for Talo.  Mamizuka and Kekauoha, not HPD, prepared the necessary paperwork and the logistics of the search.  Although a criminal investigation was briefly initiated against Talo, Detective Lacuata testified that his investigation started and ended on December 6, 2019.

Based on Detective Lacuata's testimony, as well as the other evidence presented at the hearings on the Motion to Suppress Evidence and Motion to Revoke Probation, the Circuit Court found and concluded that "[t]he search was not a subterfuge or a ruse for criminal prosecution or an HPD investigation."

On appeal, Talo does not challenge the Circuit Court's FOF 30 determining that "[t]he probation officers had specific and articulable facts to support reasonable suspicion to conduct a warrantless search of [Talo's] home and car on December 6,

25

2019."  Nor does Talo challenge FOF 31 providing that "[t]he search was constitutional, supported by reasonable suspicion and the specific and articulable facts set forth above."  Instead, Talo challenges FOF 1 as clearly erroneous purportedly to the extent that the Circuit Court found the testimonies credible.  FOF 1 provides:

> 1.    The Court heard testimony from [PO Naito], Probation Supervisor [Mamizuka], and Probation Supervisor [Kekauoha].  The Court found their testimonies to be credible.

However, "it is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trial judge."  Propios, 76 Hawaiʻi at 482, 879 P.2d at 1065 (citation and internal quotation marks omitted).  FOF 1 is not clearly erroneous.

Talo also challenges FOF 2, which provides:

> 2.    Probation Supervisors Mamizuka and Kekauoha are specifically the heads of the [APD's] Search Unit, and they investigated, planned and executed the warrantless search at issue herein.

Talo argues that FOF 2 is clearly erroneous because the evidence demonstrated that HPD was involved in the search, including a post-search investigation conducted by Detective Lacuata.  This argument is without merit.  Kekauoha testified that she was a probation supervisor "for the section that is supervising [Talo], as well as the supervisor for the search unit with adult client services branch."  Mamizuka testified that she was a PSI intake section administrator as well as "the search and

seizure assistant supervisor."  Mamizuka also testified that she and Kekauoha were "primarily assigned to do the warrantless search and seizure[.]"  Jenifer testified that Kekauoha was in charge of probation.  Mamizuka testified that Kekauoha "does the case agent portion, which is a lot of the footwork and the paperwork."  Mamizuka also testified that she came in to "prepar[e] for the search and the debriefing with the staff" and that this work was not intertwined with HPD in any way.  Kekauoha stated that she planned the warrantless search.  Thus, the record supports FOF 2, and it is not clearly erroneous.

Talo challenges FOFs 21, 23, 24 and 25, which state:

21.  There was no unreasonable delay by probation officers between October and November, 2019, leading up to the December 6, 2019 search.

23.  During the time frame of October and November, the probation officers also needed to have [Talo] confirm his exact address by providing the apartment number for the ʻEhoʻeho Avenue residence.

24.  During the October - November, 2019 timeframe, [Talo] missed the October 10 and October 17 probation appointments.  He came in on October 25, 2019 for his appointment.  At that time, he wrote his exact address and probation officers were able to confirm the apartment number.

25.  [Talo] reported again on November 8, 2019, and the probation officer reconfirmed that [Talo]'s address was the same apartment - 224.

Talo also challenges FOFs 28, 32, and 33:

28.  The time frame to finalize the planning and execution of the search - approximately seventeen days - was not unreasonable under these specific factual circumstances.  The probation officers were methodical in their follow-up investigation.

32.  The search was properly conducted for probation purposes, for public safety, and the rehabilitative goals of probation.

> 33.     The search was not a subterfuge or a ruse for criminal prosecution or an HPD investigation.

Talo argues that the delay between September 30, 2019, and December 6, 2019, was unreasonable.  Talo submits that "[i]f the purpose of the search was truly to enforce terms and conditions of probation and to advance the goal of rehabilitation, the search could have been conducted much sooner."  Talo further argues that "[e]ven if it was necessary for Talo to personally confirm his address, after he did on October 25, 2019, there was no justification for delaying the search until December 6, 2019."  Talo contends that these FOFs are clearly erroneous because "the investigation by the probation officers was inordinately and unnecessarily long because the search was not conducted for a probationary purpose but as a ruse to conduct a warrantless search for criminal charges."

However, Talo does not challenge the Circuit Court's FOF 22 or FOF 29, which provide:

> 22.     Probation Supervisor Kekauoha had much difficulty maintaining consistent contact with [Jenifer] during the period of October and November.  Probation Supervisor described her efforts as having "phone tag" with [Jenifer].

> 29.     The steps they took and the follow-up they did from the time of the first report of a possible firearm possession by [Sgt. Phillips] on September 30, 2019 up to the search that was executed on December 6, 2019 were reasonable and appropriate under the circumstances.

In addition, the record includes, *inter alia*, the following exchange between Talo's counsel and Kekauoha:

> Q     Okay.  So on direct you were asked, you know, why did it take so long for you guys to do a search of [Talo]'s residence when you initially found out about [Talo]

28

> possibly possessing a firearm on September 30th.  Do you remember your answer?
>
> A     What I needed to do is I needed to make sure that I had enough information and also I wanted to be sure that we could confirm [Talo]'s address.  So he needed to indicate that apartment number.  And I needed -- I wanted to talk to Jenifer in person.

Kekauoha testified that Talo did not confirm his full address until October 25th.  The record supports that Talo failed to report to his probation officer on October 10 and October 17, 2019, but that he reported on October 25, 2019, and confirmed his address at that time.  Additionally, Mamizuka testified that she met with Jenifer and Son in person at the probation office on November 19, 2019.  Mamizuka testified that the purpose of that meeting was "to verify any facts that [Jenifer] might be -- discussing about the firearm or the ammunition."  Mamizuka stated that during this November 19, 2019 meeting, Jenifer described the firearm in her household, the location of the firearm, and concerns about Talo's temperament.  Mamizuka testified that Jenifer "looked physically okay," but she felt Jenifer's life was in danger after the November 19, 2019 meeting.  Mamizuka did not contact the police or notify anyone about her concerns regarding Jenifer's safety because the focus was removing the firearm and ammunition.  Mamizuka noted that it "might take a month, a month and a half" to coordinate and prepare for a warrantless search of a home where the subject is a gun.

We conclude that FOFs 21, 23, 24, 25, and 28 are supported by substantial evidence in the record, including

unchallenged FOFs 22 and 29, and the Circuit Court did not clearly err in finding that the length of time it took to perform the warrantless search was not unreasonable.

Regarding FOFs 32 and 33, Mamizuka testified that "the focus was just removing the firearm and the ammunition from the household" and on investigating a probation violation.  Kekauoha also testified that the purpose of the warrantless search was to address the suspected probation violation, to recover evidence of a probation violation, and to remove the firearm for public safety reasons.  Kekauoha testified that the warrantless search was rehabilitative because it was intended to ensure Talo was complying with the terms and conditions of probation, and Kekauoha had received information that Talo was violating the terms and conditions of his probation.

Mamizuka also testified that HPD was involved in the warrantless search for only security purposes, and HPD told APD that they would not get involved in transporting Talo in advance of the search.  Mamizuka testified that, in addition to providing security, HPD's presence was necessary to assist in removing and storing any recovered ammunition or firearm because the probation officers were not trained to handle firearms and the probation office had no room to store ammunition or firearms.  Mamizuka testified that only probation officers conducted the search for the firearm and ammunition, and that HPD officers did not participate in the search and were not near the probation

officers during the warrantless search of the bedroom.  She also testified that Talo was arrested by HPD because probation officers rely on sheriffs and the police to execute their arrests on warrants.  In addition, Detective Lacuata testified that there would be no criminal prosecution against Talo, and the case was not conferred to the prosecutor's office any time on or after December 6, 2019.  We conclude that, notwithstanding some evidence that could support an alternative analysis, evidence of sufficient quality and probative value supports the Circuit Court's findings that the purpose of the warrantless search was for probation purposes and the search was not a ruse for criminal prosecution.  Therefore, FOFs 32 and 33 are not clearly erroneous.

Talo further challenges the following FOFs:

34.    [Detective Lacuata] did not complete his criminal investigation and such investigation was stopped when he was told that there would be no conferral with the prosecutor's office.  "No conferral" meant that the case was not going to be prosecuted by the prosecutor's office.

35.    During the course of these proceedings, the State, through the prosecutor in this case, has stated on record that [Talo] will not be subject to criminal prosecution based on the conduct that is the basis for this probation violation.  Therefore, the State is judicially estopped from subjecting [Talo] to any future firearm or ammunition possession prosecution in the state court.

36.    The purpose of the search defined by Probation was to investigate the probation violation.

37.    The evidence shows that the investigation leading up to the search was conducted by the [APD].  The debriefing of probation staff participating in the search was conducted by the [APD].  The parameters and explanation of the search were crafted by the [APD].  On the day of the search, the search was directed and executed by probation supervisors and officers, not

> HPD.  The discovery and the photographing of the evidence was also conducted by probation and not HPD.
>
> 38.  HPD's presence was requested by the [APD] for security purposes only.

Talo argues that these FOFs "are clearly erroneous to the extent that they find that the primary purpose of the investigation was probationary not to conduct a warrantless search for criminal prosecution."  We conclude that these FOFs are not clearly erroneous because there is substantial evidence in the record to support them.  Detective Lacuata testified that Talo was in custody following his arrest after the execution of the warrantless probation search, but Talo's case was "not conferred" to the prosecutor's office.  In other words, Talo was not going to be charged with new violations.  Detective Lacuata testified that on December 6, 2019, he was instructed to stop any further investigation of potential criminal prosecution stemming from the warrantless search of Talo's residence.  While Detective Lacuata had "started a little bit of interviewing," including recorded interviews with Jenifer and Son, Detective Lacuata explained that the interviews were to establish that the recovered firearms were operational and whether the ammunition was real.[7]  Detective Lacuata testified that he was assigned a

---

[7]    Detective Lacuata also testified that he ran a serial number check from the serial number of the firearm, and that Talo was not the owner of the recovered firearm.  Detective Lacuata further testified that he called Son on December 7, 2019, to explain how to pick up Talo from the police station, and not to interview him.

criminal case regarding illegal ownership of a firearm but that his investigation began and ended on December 6, 2019.[8]

Further, the State represented multiple times that Talo would not be subject to criminal prosecution stemming from the warrantless search.  As previously discussed, both Mamizuka and Kekauoha testified that the purpose of the search was to investigate a probation violation.  The testimony included that Kekauoha initiated the warrantless search.  Kekauoha handled the paperwork, and Mamizuka came in to prepare for the search and debrief with the staff.  There was no intertwinement or contact with HPD.  Only the probation officers would be transporting Talo to the search, and HPD would be involved in the warrantless search only for security purposes.  The search unit was made up of only probation officers, and HPD officers were "on the outside or in the living room" while the probation officers were conducting the search.  Probation officers Jessica Ayers and Greg Uwono discovered the ammunition, and Greg Uwono, not HPD, searched Talo.  Mamizuka discovered the firearm "between the mattress and the box spring" wrapped in a lavalava.  Probation officers recovered men's shorts and a man's shirt as evidence. Mamizuka processed the evidence and prepared and signed the evidence report, although the firearm and ammunition were handled by HPD after discovery.  Kekauoha also prepared the warrantless

_____

[8]    Detective Lacuata testified that he called Talo on December 7, 2019, to administratively close the case, including informing Talo of certain constitutional rights.

search report, which was submitted to HPD, and which included a statement of receipt of property, a diagram of Talo's residence, a diagram of the bedroom, an evidence report, and a photographic report.  Thus, the Circuit Court did not clearly err in adopting these FOFs.

Lastly, Talo challenged COLs 5 and 6, providing:

5.   The search in this case was not a subterfuge nor a cover-up for a criminal investigation by the police. No criminal investigation based on the firearm and ammunition recovery has been completed, and no prosecution will be brought in this case.

6.   Under HRS § 706-624(2) and § 706-606(2), discretionary probation conditions may be imposed if they are reasonably related and necessary to the HRS § 706-606 sentencing factors.  In this case, the warrantless search was properly conducted for legitimate probation purposes, for protection of the public, to deter future criminal conduct, and to further the rehabilitative goals of probation.

Talo argues that these COLs are wrong because "the true purpose of the search in this case was to conduct a warrantless search for purposes of criminal prosecution, not probationary purposes.  The fact that the prosecution was ultimately halted did not change the initial character of the search."

"The purpose of the search, not the physical presence of a parole agent, is the vital element."  Propios, 76 Hawai'i at 480, 879 P.2d at 1063.  Here, the Circuit Court's findings and the supporting testimony established that the purpose of the search was to recover evidence of a probation violation, to remove the firearm and ammunition from the residence, to secure the firearm and ammunition for the safety of the public, as well as for the rehabilitative purpose of investigating compliance

34

with the terms and conditions of probation.  Talo does not point to any place in the record where, prior to the warrantless search on December 6, 2019, HPD had any meaningful involvement.

As discussed in Propios, it is reasonable for police to "aid and protect[]" probation officers during a warrantless search.  76 Hawaiʻi at 480, 879 P.2d at 1063.  The record in this case is consistent with that proposition.

In Fields, the supreme court found "no difficulty in finding the necessary connection between such searches and the rehabilitation" of a probationer where the probation officer had been "expressly authorized" to search for illegal drugs and the probationer had a "known proclivity" for illicit drugs.  Fields, 67 Haw. at 280, 686 P.2d at 1389.  Here, Talo was prohibited from possessing or owning any firearms or ammunition, and was fully informed of that prohibition.  Kekauoha received information that Talo possessed a firearm and ammunition.  Based on that information, probation officers searched Talo's residence.

We conclude that COLs 5 and 6 are not wrong.

B.   Talo's Resentencing

Talo also argues – assuming arguendo, that the Circuit Court did not err in denying Talo's Motion to Suppress Evidence – that the Circuit Court abused its discretion in re-sentencing Talo to an open five-year term of incarceration.  Talo contends

that based on the factors set forth in HRS §§ 706-606 (2014)[9] and

706-621 (2014)[10], the Circuit Court abused its discretion in

---

[9]    HRS § 706-606 provides:

> **§ 706-606  Factors to be considered in imposing a sentence.**  The court, in determining the particular sentence to be imposed, shall consider:
>
> > (1)    The nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2)    The need for the sentence imposed:
> >
> > > (a)    To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
> > > (b)    To afford adequate deterrence to criminal conduct;
> > > (c)    To protect the public from further crimes of the defendant; and
> > > (d)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> >
> > (3)    The kinds of sentences available; and
> >
> > (4)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

[10]    HRS § 706-621 provides:

> **§ 706-621  Factors to be considered in imposing a term of probation.**  The court, in determining whether to impose a term of probation, shall consider:
>
> > (1)    The factors set forth in section 706-606 to the extent that they are applicable;
> >
> > (2)    The following factors, to be accorded weight in favor of withholding a sentence of imprisonment:
> >
> > > (a)    The defendant's criminal conduct neither caused nor threatened serious harm;
> > > (b)    The defendant acted under a strong provocation;
> > > (c)    There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
> > > (d)    The victim of the defendant's criminal conduct induced or facilitated its

(continued...)

sentencing Talo to a five-year term of incarceration instead of re-sentencing him to probation.  Talo points to his argument before the Circuit Court, including that Talo had not been arrested since he was put on probation in 2017, his character and attitude supported probation, his help in raising the six children allowed his wife to pursue a career and she would suffer from his going back to prison, and Talo was not a danger to the community or his family.

The supreme court has explained that "[t]he weight to be given the factors set forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case."  State v. Kong, 131 Hawai‘i 94, 101, 315 P.3d 720, 727 (2013) (citation omitted).  A sentencing court "is not required to articulate and explain its conclusions with respect

---

[10](...continued)

| | commission; |
|---|---|
| (e) | The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime; |
| (f) | The defendant's criminal conduct was the result of circumstances unlikely to recur; |
| (g) | The character and attitudes of the defendant indicate that the defendant is unlikely to commit another crime; |
| (h) | The defendant is particularly likely to respond affirmatively to a program of restitution or a probationary program or both; |
| (i) | The imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents; and |
| (j) | The expedited sentencing program set forth in section 706-606.3, if the defendant has qualified for that sentencing program. |

to every factor listed in HRS § 706-606.  Rather, it is presumed that a sentencing court will have considered all factors before imposing concurrent or consecutive terms of imprisonment under HRS § 706-606."  Lewi v. State, 145 Hawaiʻi 333, 350-51, 452 P.3d 330, 347-48 (2019) (citation, footnote, and internal quotation marks omitted).  In considering whether to impose a sentence of probation pursuant to HRS § 706-621, a sentencing court is only required to consider the HRS § 706-606 factors that are applicable.  State v. Rauch, 94 Hawaiʻi 315, 328, 13 P.3d 324, 337 (2000).

Here, the record reflects that the Circuit Court properly considered the factors in HRS § 706-621 and HRS § 706-606 when re-sentencing Talo, including the nature and circumstances of the offense and Talo's history and characteristics.  The State noted public safety concerns, as well as how Talo's actions affected his family.

When re-sentencing Talo, the Circuit Court explained:

> In imposing a sentence and resentencing, the court has to follow the criteria, and the court is guided by criteria in these two statutes:  706-621, that requires that the court to weigh and consider reasons witholding sentence of imprisonment versus imposing a sentencing of imprisonment, and I also have to weigh the general sentencing factors under 706-606.
>
> These factors include that the court has to look at the nature and circumstance of the offense and the history and the characteristics of the defendant.  When I look at those factors and I look at the underlying offense, which is assault in the second degree, it was a very violent assault. And the court's determination is that this underlying offense, while there was compliance on probation, there was a material and inexcusable violation of probation of being in possession of a shotgun and ammunition.
>
> . . . .

> [T]his probation violation and the court's determination is that the nature and circumstances of this particular probation violation are serious and concerning. And while [Talo] did comply with the correctional treatment ordered by probation, the court finds that [Talo's] character and attitude as evidenced by the nature of these particular violations, which include the illegal possession of a firearm and ammunition, show an egregious disregard for the law and court orders. And the nature of this probation violation in combination with the felony assault conviction do militate in favor of a prison term.
>
> The court cannot conclude that [Talo] is unlikely to commit another crime where the probation violation conduct would constitute two Class B felonies if they had been charged. The sentence must reflect the seriousness of the offenses and the probation violation.

We conclude that the record reflects that the Circuit Court adequately considered the factors in HRS §§ 706-606 and 706-621, and the Circuit Court did not abuse its discretion in re-sentencing Talo to a five-year term of imprisonment.

## V.   CONCLUSION

For these reasons, the Circuit Court's June 18, 2020 Resentencing Order is affirmed.

DATED: Honolulu, Hawaiʻi, May 20, 2022,

On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Steven S. Alm,
Prosecuting Attorney,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ James H. Ashford
Circuit Court Judge